THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN S. VARLEY, Defendant-Appellant.

(No. 72-120;

Second District—November 27, 1972.

*Rehearing denied December 28, 1972.*

Peregrine, Stime & Henninger, of Wheaton, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Following a bench trial defendant was found guilty of operating a motor vehicle while under the influence of intoxicating liquor and fined $100 and costs. He appeals contending that he was not proven guilty beyond a reasonable doubt and that he did not receive a fair and impartial trial.

On June 28, 1971 at about 8:45 P.M. defendant entered his car in the commuter parking lot in Wheaton, at Main Street and Liberty Drive. After he started his car and began to back out of a diagonal parking stall, a police officer, who testified that he "noticed the driver weaving," requested the defendant to stop. The defendant's foot missed the pedal several times, but the car was brought to a stop after moving about 15 feet. When defendant was responding to a request to produce his driver's license, he dropped some credit cards into his lap. As he got out of the car he swayed "in a staggering manner". The officer testified further that he detected a strong odor of alcohol beverage on defendant's breath and he arrested him for driving while intoxicated. The officer parked the car and, after locking it, assisted the defendant to a service station across the street and called for a squad car. The squad car transported both the defendant and the officer to the police station. The officer also testified that during this time defendant appeared to be confused; his eyes blood shot and out of focus; his speech slurred and thick-tongued; and his balance in walking and standing unsteady. On the "finger-to-nose" test the officer testified the defendant missed his nose and touched his moustache, the other officer testified that defendant touched his opposite cheek; on the coin test defendant picked up the coins but fumbled with them. The defendant comprehended all the instructions in the interview

section of the alcohol influence report the officer gave him and answered some 39 questions concerning his history and activities of that day, and was polite and cooperative at all times.

Upon completion of the tests, between 9 and 9:30 P.M., a long-time friend and neighbor came to the station to drive defendant home. The police officer acknowledged that at that time defendant's "condition had improved". The friend testified that when he saw the defendant at the station defendant did not show any evidence of intoxication, appeared perfectly normal, and that he would have had no reluctance to ride in an automobile operated by defendant in his condition of sobriety as it then appeared.

The defendant testified that two years prior to his arrest his teeth were extracted and the dental plates produce a slight speech impediment which becomes worse when he is excited and tired. He suffers from allergies which cause his eyes to be red or mildly inflamed. He was under the care of two doctors, one of whom was treating him for a nervous condition for which he regularly took a mild tranquilizer, and the other, Dr. Van Alyea, treated him for an inner ear condition known as catarrhal otitis.

On June 28, 1971, the day when the temperature reached 100°, the defendant after leaving his Chicago office at 5 P.M. stopped for a beer or two in advance of a business meeting he had scheduled at 5:30 several blocks away. From 5:30 to 6:45 he attended that meeting and then walked to the Chicago & Northwestern station. There he had another beer or two between 7 and 7:30 P.M. before boarding the 7:40 train for Wheaton. During the ride home he napped as he did customarily. Arriving in Wheaton he walked to the parking lot, started the engine, rolled down the window, turned on the air conditioner, and was in the process of backing out when the officer arrested him. He denied having any difficulty with his foot or otherwise in stopping the car. He did acknowledge dropping some credit cards in his lap while looking for his driver's license and said he was still a little drowsy at that time.

Dr. Van Alyea, a board-certified specialist in the field of ear, nose and throat, testified that defendant was his patient since 1955 and received treatment for tubal catarrh, a pathological condition which affects defendant's equilibrium. He further testified defendant's condition is chronic, subject to periodic exacerbations, is aggravated by his allergies, and the symptoms are intensified by sleep; that persons suffering from that disease may give the appearance of intoxication without any ingestion of alcohol.

Dr. Van Alyea's testimony was not controverted, neither was defendant's testimony as to his medical problems; nor was his testimony as to his activities of the afternoon and evening impeached or contradicted.

■■ It is within the province of the trier of the facts to weigh the evidence, determine credibility, and decide whether the elements of the charge are proved. But where the record reveals a reasonable doubt as to defendant's guilt, this court must reverse. *People v. Sullivan*, 132 Ill.App. 2d 674, 270 N.E.2d 571.

■■ The record here discloses that defendant had just begun backing out of the parking stall in the commuter lot and had not endangered any property or person when the officer arrested him for driving while intoxicated. Defendant was able to tell what he had done after he left his Chicago office, answered a long series of questions comprehendingly and correctly; he had one or two beers between 5 and 5:30 P.M. and one or two beers between 7 and 7:30 P.M. before boarding the train for Wheaton. He insisted he was not under the influence of intoxicating liquor. He explained some of his conduct by saying that his dentures affect his speech, especially when he becomes excited, that his eyes are continually red or mildly inflamed because of allergies from which he suffers, that he had a disease or defect of his inner ear, that he has difficulty in walking a straight line and experiences dizziness or instability. This positive and unimpeached testimony of the defendant as to his medical condition was corroborated by his physician and was not contradicted by any witness. His friend, who went to the police station to drive him home, saw defendant some 30 minutes after the arrest and testified, as noted above, that defendant showed no evidence of intoxication and that his appearance was perfectly normal.

Having reviewed the record we hold that the evidence was not sufficient to prove beyond a reasonable doubt that defendant drove a motor vehicle while under the influence of intoxicating liquor. It is therefore unnecessary for us to consider defendant's further contention. The judgment of the trial court is reversed.

Judgment reversed.

GUILD and T. MORAN, JJ., concur.