THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORMAN J. FENELON, Defendant-Appellant.

(No. 72-300;

Second District—October 22, 1973.

Fearer & Nye, of Rochelle, (Philip H. Nye, of counsel,) for appellant.

Ralph J. Caldwell, State's Attorney, of Oregon, (Peter J. Woods, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted in a bench trial of driving while under the influence of intoxicating liquor. (Ill. Rev. Stat. 1971, ch. 95½, par. 11—501(a).) He appeals from the conviction and sentence of two years probation, the first 9 months to be served in Vandalia.

He contends that the court erred when it admitted the video portion of a video-tape recording made in the police station after his arrest; and he further urges that he was not proven guilty beyond a reasonable doubt.

Three police officers who had investigated a report of an accident testified for the State. State Trooper Hall testified that he arrived at the scene, on U.S. Highway 51 a few miles south of the city of Rochelle in the vicinity of what was described as the "airport curve", about 10 P.M. He observed defendant's car in a ditch heading west, with the rear portion partially on the highway. He found 130 feet of solid skid marks in the center of the southbound lane. Defendant told the officer that he was traveling north, passing a truck, and lost control of his car coming out of the curve because there was something wrong with his brakes or steering. The officer did not check for a mechanical defect but said that the

wrecker called to remove the car had no trouble driving it out of the ditch. The officer stated that he observed a strong odor of alcohol on defendant's breath, that defendant's clothes were messed up and that defendant told him he had four drinks. He was of the opinion that defendant was under the influence of intoxicating beverages.

Two Rochelle police officers, who arrived at the scene prior to Officer Hall, testified. Officer Wells stated that defendant told him he had "lost the front end, but what really had upset him was that he had spilled his kidney beans". He observed that defendant's clothes were rather mussed, his hair was messed, and he had a little bit of difficulty in speaking and walking. When the officers were directing traffic, the defendant continuously came to the centerline of the highway, watching cars go by. He was repeatedly asked to move, and was finally helped off the highway. The officer smelled alcohol on his breath, and was of the opinion that defendant was under the influence of liquor.

The testimony of Officer Preston, the other Rochelle officer, was essentially the same. He observed that, although defendant's clothes were in disarray, they were like that most of the time. Defendant's glasses kept sliding down on his nose, but the officer did not know whether they always did this. Defendant seemed unsteady on his feet. The officer detected the odor of alcoholic beverage while talking to him, and also was of the opinion that defendant was intoxicated.

The State submitted in evidence a video-tape of tests taken by defendant at the police station some two hours after the accident. After the court viewed the recording, defendant's counsel asked that the portion of the tape subsequent to defendant's request to remain silent be deleted for failure to give proper *Miranda* warnings. The court agreed that there was no affirmative waiver of *Miranda* rights and ruled that he would exclude all the admissions and all of the statements inculpatory and exculpatory made by the defendant; but that with regard to the physical evidence on the tape, he would overrule the objection as to admissibility.

Defendant testified in his own behalf that he was passing when, due to the car's power steering unit being low on fluid, the wheels pulled to the left. He applied the brakes but the car slid into the bank. He said that until officers came, he directed traffic with a flashlight borrowed from a passer-by; that after the police arrived, he just stood by a tree as directed. He said that in the next day or so, he had one-half quart of power steering fluid put in his car which holds three-quarters of a quart. Defendant stated that he drank three, and maybe four, beers during a two-hour period prior to the accident. He wears wash-and-wear shirts

and does not iron them. In warm weather his glasses keep sliding down.

We have viewed the entire audio-video tape. In it, the officer who had arrested defendant at the scene of the accident is depicted holding a microphone. He first recited the usual *Miranda* warnings. Defendant was also told that he was being filmed and his answers recorded. At this point the trooper asked the silent defendant, "Do you wish to say nothing?" and defendant answered, "You stated my rights". The officer again stated defendant could not be forced to answer, but continued to question him. The officer then asked if the defendant would do some physical tests if he did not want to answer questions; to which defendant replied, "You said I could remain silent." When the officer asked defendant if he wished to take the "agility test, the performance test," the defendant answered, "No. At this time I am a little bit tired—a little nervous. Not at this time." The trooper duly reported to the camera that the defendant "refuses to take tests or answer any questions." However, the scene continues with the trooper asking defendant to empty his pockets, to count and separate the $1.55 into quarters, nickels and dimes; to state the amount in each pile, to walk a line and to do finger-to-nose tests. In our view, the defendant performed the coin test and the finger-to-nose tests perfectly; and after one false start, not only walked the line without a misstep, but proceeded to do the test backward in perfect alignment.

We are, therefore, perplexed by the defendant's objection to the tape, but nevertheless will rule on the legal issue which he has raised.

■■ The court was, of course, correct in refusing to consider any statements made by the defendant, whether exculpatory or inculpatory, after he chose to remain silent. (*Miranda v. Arizona* (1966), 384 U.S. 436.) But we do not agree with defendant that under the circumstances of this case, the court was thereby precluded from considering the video portion of the recording. *People v. Ardella* (1971), 49 Ill.2d 517, 520, is authority for the rule that audio-video tapes of inquiries and tests for intoxication do not offend either the Fourth or the Fifth Amendment of the U.S. Constitution, assuming that defendant has been given his full *Miranda* warnings and has waived his rights, even though he has not been specifically warned that his responses would be recorded on audio-video tape and that the tape could be used as evidence against him. *Ardella* also holds that if a defendant does know his recording is being made, there is no violation of the Illinois Eavesdropping Statute. The issue, which *Ardella* did not specifically decide and which we have before us, is whether the waiver of *Miranda* rights is a prerequisite to the admission of the video recording of physical tests to determine intoxication. The rationale of *Ardella* (49 Ill.2d at 521), however, is that if the evidence

of the tests themselves is admissible (citing *Schmerber v. California*, 384 U.S. 757), the recording of the tests is admissible.

■■■ The court in *Ardella* recognized that in absence of a *Miranda* waiver, it would be necessary to analyze critically the film and the recording to ascertain whether the responses were such as would fall within the protection of the Fifth Amendment or whether they would constitute only physical evidence (521). We have so analyzed the recording before us and conclude that the portion in question is not testimonial in nature. From a psychological viewpoint, it of course may be argued, as defendant here does, that physical actions of the defendant shown on the video portions of the tape are actually recorded responses to the tests and equivalent to questions and answers. However, the legal authorities are to the contrary. (See *People v. Mulack* (1968), 40 Ill.2d 429, 432; *People v. Krueger* (1968), 99 Ill.App.2d 431, 437-8. See also *Schmerber v. California*, 384 U.S. 757, 764; *City of Piqua v. Hinger*, 15 Ohio St. 2d 110, (1968), 238 N.E.2d 766, *cert. denied*, 393 U.S. 1001; *Rowe v. State* (1973), (Ind.App.) 299 N.E.2d 852.) We conclude that the admission of the recording, limited as it was to the video portion, was proper.

The defendant's contention that the evidence is insufficient to prove the offense charged beyond a reasonable doubt must then be reviewed on the entire record, including the recording. The officers who testified apparently based their opinion of intoxication on the admissions of defendant that he had three or four beers, the odor of alcohol which they found, and the appearance and actions of the defendant at the scene of the accident. The evidence that the defendant seemingly had the ability to converge coherently with the officers, his testimony that the accident was caused by mechanical failure, the skid-marks which could evidence an effort to bring the car under control, and the fact that the acts and appearance of the defendant could also have been consistent with the effects of an accident, ordinarily could be said to create a conflict in the evidence which the trier of fact is given wide discretion to resolve. See *People v. Mulack* (1968), 40 Ill.2d 429, 432-3; *People v. Scott* (1966), 34 Ill.2d 41, 45.

■■ In absence of scientific tests for intoxication, due weight should have been accorded the outcome of the physical tests in discerning whether guilt had been proven beyond a reasonable doubt. We have directly observed, in the recording, the same test results as seen by the trial judge. This evidence supports defendant's explanation and effectively diminishes the persuasiveness of the officers' opinions of intoxication.

On the whole record we conclude that the court's judgment was against

the manifest weight of the evidence and that the defendant has not been proven guilty of the offense charged beyond a reasonable doubt. (See *People v. Varley* (1972), 8 Ill.App.3d 657, 660; *People v. Sullivan* (1971), 132 Ill.App.2d 674, 677, 678.) We therefore reverse.

Reversed.

GUILD, P. J., and T. MORAN, J., concur.