*104 OPINION OF THE COURT
John J. Ark, J.
The defendant was charged with driving while intoxicated, a violation of subdivision 3 of section 1192 of the Vehicle and Traffic Law, driving while license suspended, a. violation of subdivision 1 of section 511 of the Vehicle and Traffic Law, both misdemeanors, and various other traffic infractions. The case was tried on October 5, 1982 before a jury in the Brighton Town Justice Court. During the trial, the prosecution offered into evidence a video tape made of the defendant shortly after the time of his arrest on December 19, 1981. The video tape was made as a matter of routine in the processing of a driving while intoxicated arrest by the Town of Brighton Police Department pursuant to rules and regulations of the Brighton Police Department. The defense objected to the introduction of the video tape on the following grounds:
(1) Video taping of the defendant is an invasion of the defendant’s right to privacy (US Const, 4th Arndt);
(2) Prior to the video taping of the defendant the defendant should have been warned of the use of the video taping and had a right to refuse the use of a video tape;
(3) The proper foundation for the admissibility of the video tape had not been laid;
(4) Prior to the introduction at the time of trial of any video tape of a defendant, notice must be served upon the defense by the prosecution as to any incriminating statements made by the defendant pursuant to CPL 710.30.
After hearing the various arguments of the respective counsel, and after having researched considerable law on the matter, this court holds that the video tape of the defendant during his processing and testing for driving while intoxicated is essentially evidence that “speaks for itself.” The video tape is merely a mechanical reproduction of the observations made by the individual (s) who witnessed the actions of the defendant at the time of the video taping. Accordingly, the admissibility of the video tape will ultimately depend upon testimony by either the operator of the video camera or other individual(s) so suited that the video tape fairly and accurately portrays what was oh- *105 served at the time and place. Essentially, video taping is to be used to illustrate competent and relevant testimony of a witness.
The proper foundation for admissibility of the video tape should include the following:
(1) The identity of the subject matter, i.e., the defendant;
(2) Properly promulgated rules and regulations of the police agency utilizing the video tape program;
(3) The competency of the operator of the video tape machine including his training, certification if required by the police department rules and regulations and actual experience if applicable. (If the operator is unavailable, an individual who was a participant in the video recording might suffice.);
(4) The type of video equipment used including the operation method, the type of lens and lens adjustment, the lighting of both the equipment and the area in which the suspect is video taped, the velocity of the video tape camera and the type and quality of the film;
(5) Evidence as to the playback of the video tape before the trier of fact which should include the speed in which the playback is run as it specifically relates to the speed at which the video tape is made;
(6) Testimony of an individual(s) specifically stating that the video tape fairly, truly and accurately represents the subject matter of the video tape;
(7) The officer testifying should also affirmatively state that the video tape has not been altered and suffers no distortions. But if it has been altered or is distorted, to state the basis of the alteration and/or distortion and the explanation for the alteration and/or distortion;
(8) Continuity of possession of the video tape after the tape had been completed, i.e., chain of custody.
In the present case, the prosecution presented testimony relating the rules and regulations of the Brighton Police Department driving while intoxicated video processing program. According to the rules and regulations, the video tapes should be kept in a locked video cabinet with a log which was to be completed by the sergeant each time the *106 video tape equipment was used for the program. The log further required beginning and ending meter readings (tape footage), the defendant’s name, the date and the sergeant’s name. Upon completion of an entire tape, the tape was to be logged into evidence and held until 30 days after the final disposition of the last case for which the tape was used.
The video tape was to be started when the arresting officer began to instruct the defendant how to perform the psychomotor tests as outlined in the rules and regulations of the Brighton Police Department. The tape was to conclude at the finish of the last psychomotor test performed by the defendant. During the taping of the psychomotor testing, the video recorder was to record continuously. The tape of the defendant was to include only the psychomotor testing. Should there be any deviation from the rules and regulations, a written explanation was to be filed with the log kept with the video tape equipment.
The Brighton Police Department rules and regulations required a check list for recording psychomotor tests of driving while intoxicated arrestees. This check list included 10 specific acts to be performed by the operator, starting with the turning on of the camera to the locking the cabinet. The check list was very complete and thoroughly outlined with great specificity the acts to be performed by the operator. In addition, the prosecution placed into evidence the log of the Brighton police DWI video program indicating the specific date, defendant meter start, meter finish and video tape operator as related to the above referred to defendant.
The rules and regulations of the Brighton Police Department specify that the only DWI arrests to be video taped were those when there is a trained sergeant on duty. At the time of trial, Sergeant Thomas Voelkl of the Brighton Police Department testified that he had been trained in the use of the video tape equipment, was a sergeant on the Brighton Police Department at the time of the video taping and had considerable experience in the use of this equipment.
This court finds that the rules and regulations of the Brighton Police Department relating to the video taping of *107 driving while intoxicated suspects clearly fall within the parameters and guidelines as set out above. The court further finds that the video taping of the above referred to defendant by Sergeant Voelkl was done properly within the rules and regulations of the Brighton Police Department and is to be admitted into evidence.
During the court’s observation of the actual video tape of the defendant, certain statements were made by the defendant. Prior to the playing of the video tape before the jury, defense counsel requested that the court review the video tape to make certain that no incriminating statements were made by the defendant and if these statements were made by the defendant that the defendant be afforded all of his rights pursuant to CPL 710.30. Based on the representation of the prosecution, the court made a pre-viewing determination that no incriminating statements were included in the video tape. However, the defense position is well founded. Although it was not necessary in this particular instance, this court believes that should any question arise as the possible incriminating statements made by the defendant during the course of the video taping, the court, out of the presence of the jury, should review the video tape and make a determination as to the incriminating nature of the statements. Should the court determine that the statements were in fact incriminating, a further decision must be rendered as to whether the defendant’s statements were obtained in violation of his or her constitutional rights under Miranda v Arizona (384 US 436). Should the court determine that the defendant’s constitutional rights were violated, the incriminating statements must be excised from the video tape prior to its viewing by the jury. However, this requirement should not be construed as a prerequisite application of Miranda warnings to obtaining physical evidence or requesting performance tests.
The rules and regulations of the Brighton Police Department specifically state that the video tape of the defendant will include “only the psychomotor testing no more and no less”. Although this court does not believe that it is necessary to advise a DWI suspect of his constitutional rights prior to the video taping of his psychomotor skills, the court believes it would be in the best interests of justice *108 to video tape the advising the defendant of his constitutional rights, the advising him of the warnings as required by the New York State Department of Motor Vehicles as relate to the revocation of his driver’s license should he refuse the chemical test and further advising the defendant that he is in the process of being video taped. As appropriately pointed out in Hendricks v Swenson (456 F2d 503, 506): “we suggest that a video tape is protection for the accused. If he is hesitaiit, uncertain, or faltering, such facts will appear. If he has been worn out by interrogation, physically abused * * * the tape will corroborate him in ways a typewritten statement would not. Instead of denying a defendant his rights, we believe it is a modern technique to protect a defendant’s rights.” The court then said (pp 506-507): “we think [tape] no more incriminates him than the taking of still pictures or blood or urine samples.”
The advising of the defendant of his constitutional rights pursuant to Miranda v Arizona (supra) applies only to incriminating statements made by the defendant during the course of the video taping. Under no circumstances is the giving of the Miranda warnings meant to imply that the video taping of a defendant constitutes a violation of any constitutional rights afforded the defendant when the video taping is merely meant to illustrate the testimony of a witness. However, the courts must be cautious to preclude the introduction of a video tape as an attempt by the prosecution to introduce a statement which was clearly substantive evidence based on an admission by the defendant. The latter instance should only be allowed after the court has made a determination that the statements were voluntarily and understandingly made by the defendant after the defendant has been fully advised as to his constitutional rights.
Accordingly, the court finds the video tape of the defendant to be admissible in evidence; and further finds no statutory or constitutional barriers to the receipt of the video tape in evidence.