## Commonwealth v. Conway

*Stuart Suss, assistant district attorney,* for the commonwealth.

*Paul J. Rubino,* for defendant.

SMITH, *J.,* January 15, 1987 — We write by reason of the commonwealth's appeal from our pretrial suppression order. While we doubt that our order has "substantially handicapped" the prosecution of this case,[1] we recognize that their certification gives

---

1. The commonwealth has the right to appeal a trial court's suppression order where it appears that the order will terminate the prosecution or will substantially handicap the commonwealth's prosecution. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963) cert. den. 375 U. S. 910 (1963). The Supreme Court of Pennsylvania defined "substantial handicap" as a situation where "[T]he evidence suppressed may well mark the difference between success and failure in the prosecution." 411 Pa. at 63, 190 A.2d at 308.

In the instant case, we excluded the audio portion of the videotape recording of defendant's performance of field tests. The arresting officer, however, may still posit his opinion concerning whether defendant passed the field tests and may do a "voice over" describing to the jury what is occurring on the videotape. Therefore, this court fails to see how our ruling either terminated or substantially handicapped the commonwealth's case.

them standing to advance their position elsewhere.

On February 12, 1986, at 9:00 a.m. defendant, James Conway, was arrested in Devon, Chester County, for allegedly driving under the influence. Defense counsel does not contend that the police lacked cause to stop defendant nor does he challenge the propriety of the field tests administered on the roadway. In the interest of thoroughness, however, we will recount the activities that led to the stop.

Officer Miller of the Tredyffrin Township police was called to the scene of Hunter's Lane and Timber Lane where defendant was seated in his vehicle which was stuck on the side of the road in a snowbank. Defendant was attempting to release his car from the snowbank. When the officer approached defendant, he noted signs of intoxication and smelled the odor of alcohol. The officer attempted to administer two field tests: the horizontal gaze nystagmus and the one-leg stand. The officer concluded that defendant was incapable of completing the horizontal gaze nystagmus. The officer also felt that the one leg stand was too dangerous for defendant to complete because of the snow covered road. Defendant was arrested and transported to the Tredyffrin Township Police Department.

The issue we address involves a test the police administered at the station. There defendant was advised of his *Miranda* rights and the Implied Consent Law. Defendant said he did not want to speak to the officer. Defendant also refused any chemical testing of his blood. Defendant attempted without success to contact his attorney. Thereafter defendant was taken to a room in the police station where he was videotaped. He was again advised of his rights on camera and he again invoked his right to remain silent. Without any waiver on defendant's

part, Officer Miller directed defendant to perform four field tests. Defendant performed each test and from time to time sought further clarification from the officer as to how the test should be taken.

When the tests were completed, defendant was questioned further so the officer could complete a standard DUI arrest form. The officer asked defendant, among other things, where defendant had been and what defendant had drunk. The commonwealth achnowledges that defendant's invocation of his right to remain silent rendered Officer Miller's interrogation of defendant and defendant's responses inadmissible.

The issue then before us is whether a videotape of a defendant performing a variety of field tests requiring both physical and verbal responses is admissible after a defendant asserted his right to remain silent and never waived that right. In an effort to balance the competing interests here evident we proposed turning off the audio portion of the tape and permitting a showing of the video portion only, with the police officer doing a "voice over" to explain what was taking place on the screen. We admitted the video portion because we believe the videotape is analogous to a photograph. A defendant's invocation of *Miranda* does not preclude law enforcement personnel from taking his picture.

We feel, however, that the sound portion violates defendant's Fifth Amendment privilege against self-incrimination and that it might mislead the jury.[2] We will discuss each of these problems in turn.

The Fifth Amendment privilege against self-in-

---

2. We also recognize that a Sixth Amendment issue may be presented here. We decline to discuss this issue, however, because we feel the other two bases for our decision dispose of this matter.

crimination protects only testimonial or communicative acts. The taking of real or physical evidence from the person of defendant does not violate the privilege. See *Schmerber v. California,* 384 U. S. 757 (1966). In *Schmerber,* the United States Supreme Court held that blood extracted from a non-consenting suspect was non-testimonial evidence. Even though the evidence was admittedly "an incriminating product of compulsion," the court reasoned that:

"Not even a shadow of testimonial compulsion upon enforced communication by the accused was involved either in the extraction or in the chemical analysis. Petitioner's testimonial capacities were in no way implicated; indeed, his participation, except as a donor, was irrelevant to the results of the test, which depend upon chemical analysis and on that alone." *Id.* at 765.

The acts that Pennsylvania Courts have deemed to be non-testimonial include compelling a defendant to display himself, to appear in court, and to stand or to gesture.[3] Further, the privilege is not violated when defendant is compelled to speak or to write,[4] if done merely to determine the physical characteristics of defendant's voice or handwriting, as opposed to the substance of what defendant says or writes.

In the instant case, we recognize that the results of field tests administered by the police in a DUI case are admissible. "[T]he driver is the source of 'real or physical evidence,' compulsion of which does not come within the purview of the Fifth Amendment." *Commonwealth v. Kloch,* 230 Pa. Su-

3. *Commonwealth v. Robinson,* 229 Pa. Super. 131, 324 A.2d 441 (1974).

4. *Id.*

per. 563, 572, 327 A.2d 375, 381 (1974). Our problem with this particular videotape, however, is that defendant's performance of the field tests required defendant to give more than physical evidence. Defendant was required to respond to questions as he was taking the test. He was not giving a voice examplar; he was expressing his own thoughts and his own words while performing the tests. The police put defendant in a situation where he had to talk and then recorded his speech. Now the commonwealth seeks to use the substance of defendant's thoughts and speech against him. We feel that the audio portion of the videotape is testimonial.

We are particularly bothered by this evidence because defendant stated that he did not wish to talk to the police after he was read his *Miranda* rights. We fully understand the law of Pennsylvania to be that *Miranda* warnings are not required prior to the administration of field tests. See *Kloch*, 230 Pa. Super. 563, 327 A.2d 375. The court in *Kloch* held that *Miranda* warnings are not required when general on-the-scene investigatory questioning is conducted to determine whether there is probable cause to arrest. *Id.* at 571, 327 A.2d at 380. Here, however, defendant was already under arrest. Because the defendant was already under arrest and was asked to do more than merely performing physical tests, we feel that *Miranda* warnings were necessary. Because defendant clearly exercised these rights, we refuse to allow the commonwealth to use defendant's words and thoughts against him.

Having found no Pennsylvania case on point, our research of other jurisdictions has revealed a general willingness on the part of American courts to admit videotapes and films of a suspect's performance of field and breathalyzer tests. As one court noted:

"[T]he videotape is merely a reproduction of the observations made by the individuals who witnessed the actions of defendant at the time of videotaping and are . ... admissible . . . when properly authenticated. Such evidence provides the best indication of defendant's condition and is highly probative. Both obvious and subtle indicia of intoxication may be perceived via the videotape." *State v. Bottomly*, 208 N. J. Super. 82, 504 A.2d 1223 (Law Div. 1984), aff'd 209 N. J. Super. 23, 506 A.2d 1237 (App. Div. 1986). We agree that a videotape is an excellent source of physical evidence. It allows jurors the opportunity to view defendant as he or she was immediately after being arrested. Such evidence is especially helpful, when, as here, defendant refuses to submit to chemical and blood testing.

We fear, however, that in their zeal to use a new type of evidence, the commonwealth is trampling upon defendant's constitutional rights. We note that the court in *Bottomly* and other courts dealing with the admission of such evidence have been similarly troubled by the constitutional ramifications of airing to a jury statement made by a defendant while the physical tests were being filmed or taped. In *Bottomly*, the New Jersey Court noted that "certain verbal responses of defendant made during the administration of the breathalyzer test may be considered testimonial in nature and thus protected." 504 A.2d at 1226. The New Jersey Court found the defendant guilty of driving while intoxicated without considering any of the incriminating statements. The court pointed out "that caution must be exercised to preclude the introduction of the videotape as an attempt by the prosecution to introduce incriminating statements. . . ." *Id*. Similarly, the Illinois Appellate Court in *People v. Fenelon*, 14 Ill. App. 3d 622, 303 N. E.2d 38 (1973), affirmed the

trial court's refusal to admit the sound portion of a videotape. The court reasoned that the trial court was "correct in refusing to consider any statements made by the defendant, whether exculpatory or inculpatory, after he chose to remain silent." 303 N. E.2d at 40. Furthermore, in *People v. Ardella*, 49 Ill.2d 517, 276 N. E.2d 302 (1971), the Supreme Court of Illinois noted that certain verbal responses made during the administration of a breathalyzer test "may be testimonial in nature and thus protected as contrasted to physical or identification evidence." 276 N. E.2d at 305.[5]

We also chose to limit the presentation of the evidence because we felt the sound portion of the videotape would mislead the jury.

"[A] trial court may properly exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. . . . 'Prejudice' for the purposes of this rule, does not mean detrimental to a party's case, but rather, an undue tendency to suggest a decision on an improper basis. In Pennsylvania, the trial judge has broad discretion regarding the admission of potentially misleading and confusing evidence." *Daset Mining Corp.*, 326 Pa. Super. 14, 22, 473 A.2d 584, 588 (1984) (citations omitted).

The videotape shows a police officer instructing defendant regarding the tests. Defendant, in response, asked a series of questions, some of which are arguably incriminating. For instance, after the

---

5. See also, *State v. Nece*, 206 N. J. 118, 501 A.2d 1049 (Law Div. 1985); *People v. Strozier*, 116 Misc.2d 103, 455 N.Y. Supp.2d 217 (1982); *Lanford v. People*, 159 Colo. 36, 409 P.2d 829 (1966). But see *State v. Haefer*, 110 Wis.2d 381, 328 N.W.2d 894 (1982).

nystagmus test defendant asked whether he passed. Also, defendant asks many questions after the officer has explained each test. Defendant's confusion could be due either to a natural nervousness stemming from just having been arrested or to his allegedly inebriated state. The prejudice to defendant results from the fact that defendant, apparently confused, is performing tests that the juror will know are to determine whether defendant is intoxicated. The jurors, aware of the purpose of the test, might precipitously conclude that defendant's confusion was due to intoxication. We feel, therefore, that the sound portion of the videotape is properly excludable. Any potential prejudice is avoided if the sound portion of the recording is suppressed. The commonwealth's witness may still tell the jury whether defendant passed the test.