◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARREN PATTERSON, Appellant. [662 NYS2d 803] —Appeal by the

defendant from a judgment of the Supreme Court, Queens Court (Golia, J.), rendered February 9, 1995, convicting him of robbery in the first degree and robbery in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

On March 2, 1993, the defendant and two accomplices entered a grocery store in Queens and robbed several customers and the store owner, John Cho, at gunpoint. A surveillance camera recorded the robbery. The defendant was arrested approximately three weeks later and Mr. Cho identified him in a lineup. Subsequently, Mr. Cho died for reasons unrelated to the robbery.

At trial, the People introduced the videotape of the robbery, a tape recording of Mr. Cho's telephone call to the "911" emergency number, and testimony concerning Mr. Cho's identification of the defendant at the lineup. The defendant contends that the admission of this evidence was error.

It has been observed that the admissibility of a videotape recording requires evidence that the tape recording is "genuine and that there has been no tampering with it" (*People v McGee,* 49 NY2d 48, 59, *cert denied sub nom. Waters v New York,* 446 US 947; *see also, People v Ely,* 68 NY2d 520, 527). Moreover, "since the ultimate object of the authentification requirement is to insure the accuracy of the [videotape] sought to be admitted into evidence, any person having the requisite knowledge of the facts may verify" (*People v Byrnes,* 33 NY2d 343, 347; *see also,* Fisch, New York Evidence § 142, at 82 [2d ed]).

The People offered an adequate foundation establishing the authenticity and accuracy of the videotape. Since Mr. Cho died prior to trial, the People offered the testimony of Detective Steven Damiani, who identified Mr. Cho on the videotape and confirmed that the videotape accurately depicted the actual physical layout of the grocery store. Moreover, Damiani and another detective testified that they obtained the videotape directly from Mr. Cho approximately two weeks after the crime and kept it in their possession, unaltered, until the trial. Detective Damiani also viewed the videotape for the first time in the presence of the Mr. Cho, who himself inserted the videotape into the store surveillance system. Notably, the videotape depicts the assailant as wearing an Orlando Magic team jacket, the same jacket which the defendant was wearing when he was arrested. Under these circumstances, the evidence adduced by the People at trial sufficiently established that the videotape was "genuine and that there [had] been no tampering with it" (*People v McGee, supra,* at 59; *see also, People v Ely, supra,* at 527).

The court also properly admitted a tape recording of the 911 call made by Mr. Cho to the 911 emergency phone number. At trial, the People correctly asserted that the 911 recording was admissible as an excited utterance. The Court of Appeals has observed that "[a]n excited utterance is one made 'under the immediate and uncontrolled domination of the senses, and during the brief period when consideration of self-interest could not have been brought fully to bear by reasoned reflection' " (*People v Vasquez,* 88 NY2d 561, 579, quoting *People v Brown,* 70 NY2d 513, 518; *see also, People v Edwards,* 47 NY2d 493; *cf., People v Brown,* 80 NY2d 729). The admission of an excited utterance is entrusted in the first instance to the trial court (*People v Brown, supra,* 70 NY2d, at 519). In particular, the trial court "must ascertain whether, at the time the utterance was made, the declarant was under the stress of excitement caused by an external event sufficient to still his reflective faculties, thereby preventing opportunity for deliberation which might lead the declarant to be untruthful" (*People v Edwards, supra,* at 497; *see also, People v Brown, supra,* at 519).

Here, there is no dispute that Mr. Cho was in a state of excitement when he made the call and that his remarks were "not made under the impetus of studied reflection" (*People v Edwards, supra,* at 497; *see also, People v Brown, supra*). Indeed, the videotape, which actually captured the frantic victim making the call to 911 immediately after the assailants left his establishment, adds a particularly unusual degree of corroboration to Mr. Cho's call to 911. The videotape not only confirms the identity of Mr. Cho as the caller, but demonstrates the absence of any time interval between the commission of the crime and his call. Under the circumstances presented, the court properly received the 911 tape recording into evidence (*see, People v Ocasio,* 222 AD2d 706).

Lastly, the court permissibly allowed a police officer to testify that the deceased—and thus unavailable—victim had identified the defendant at a lineup prior to his death (*see,* CPL 60.25; *cf., People v Robinson,* 89 NY2d 648; *People v Nalty,* 141 Misc 2d 90, *affd* 160 AD2d 958). Accordingly, since the court's evidentiary rulings were correct, the judgment appealed from should be affirmed. Thompson, Florio and Luciano, JJ., concur.

O'Brien, J. P., dissents and votes to reverse the judgment and grant the defendant a new trial with the following memorandum in which Joy, J. concurs. In two companion appeals, this Court affirmed the defendant's conviction of six counts of robbery in the first degree and related offenses stemming from five store robberies for which he was sentenced to lengthy

terms of imprisonment (*see, People v Patterson,* 237 AD2d 383; *People v Patterson,* 237 AD2d 384). In the instant appeal, which also involves the robbery of a store, the People's case against the defendant was based on three pieces of evidence: a videotape from the store surveillance camera, a tape recording of a telephone call to the "911" emergency number, and a police officer's testimony that the store owner identified the defendant in a lineup. No witness to the actual robbery testified. I conclude that the evidence against the defendant was improperly admitted and deprived him of his right to confront the witnesses against him. Accordingly, I would reverse and grant the defendant a new trial.

The owner of the store, who witnessed the robbery, died in a manner unrelated to the robbery prior to the trial. The court permitted a police officer to testify that the owner identified the defendant in a lineup. Such hearsay testimony is inadmissible. "It has long been the New York rule that, absent a situation covered by CPL 60.25, a witness may not testify at trial to having overheard an eyewitness make a pretrial identification of the defendant" (*People v Rosario,* 127 AD2d 209, 213).

The circumstances here are not covered by CPL 60.25. That section permits a *witness,* who observed the defendant at the time of the crime but cannot identify him at trial, to testify that he previously identified the defendant in a lineup (*see, People v Quevas,* 81 NY2d 41; *People v Bayron,* 66 NY2d 77). A third party would then be permitted to testify that the defendant was, in fact, the person identified in the lineup (*see, People v Hernandez,* 154 AD2d 197). CPL 60.25 was enacted as a limited exception to the rule which prohibits a witness from bolstering his own identification testimony (*see, People v Jung Hing,* 212 NY 393; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 60.25, at 639). It is clear from the wording of the statute that, in order for it to come into play, the witness who observed the defendant at the time of the crime and identified him in the lineup must testify at the trial.

The majority concludes that CPL 60.25 is applicable because the store owner, due to his death, was unavailable to identify the defendant at trial (*see, e.g., People v Nalty,* 141 Misc 2d 90, *affd on other grounds* 160 AD2d 958; *cf., People v Mendez,* 155 Misc 2d 368, 370, n 3). The statute, however, creates no exception for an "unavailable" witness. In order for CPL 60.25 to apply, proof must be offered that the witness observed the defendant "at the time and place of the commission of the offense or upon some other occasion relevant to the case". The statute

does not permit the People to rely on hearsay testimony to establish that the witness, in the first instance, observed the defendant at the time of the crime.

The error with respect to the admission of the officer's lineup identification testimony is sufficient to warrant a new trial, as it deprived the defendant of his right to confront the witnesses against him. However, I conclude that the court's other evidentiary errors warrant a new trial as well.

Although the majority concludes that the testimony of the detective who viewed the videotape provided a sufficient foundation for its admission into evidence, there is a glaring omission from the People's proof, in that no witness testified that the videotape was a true, fair, and accurate representation of the events depicted thereon (*see, e.g., People v Fondal,* 154 AD2d 476; *see generally, People v Byrnes,* 33 NY2d 343, 347-349; *People v Strozier,* 116 Misc 2d 103, 105; *People v Higgins,* 89 Misc 2d 913, 917). The rule requiring such proof should be strictly adhered to in a criminal prosecution, even when the evidence of guilt on the videotape seems incontrovertible. The People chose to rely solely on the testimony of a detective who viewed the videotape two weeks after the crime, even though the police report indicated that there were five witnesses to the robbery in addition to the store owner.

Finally, the People failed to lay a proper foundation for the admission, as an excited utterance, of a tape recording of a telephone call to 911 received by the police following the robbery because the identity of the caller was not established (*see, People v Ely,* 68 NY2d 520, 528; *see generally, People v Brown,* 70 NY2d 513; *cf., People v Brown,* 80 NY2d 729). I do not agree with the majority's conclusion that the People established that the store owner made the particular "911" call offered into evidence because he was seen making a telephone call on the videotape.