MICHAEL A. VASQUEZ, by SYLVIA VEGA, His Conservator, Appellant, v CONSOLIDATED RAIL CORPORATION et al., Respondents, et al., Defendants. (Action No. 1.)

MICHAEL A. VASQUEZ, by SYLVIA VEGA, His Conservator, Appellant v TOWN OF CLARKSTOWN, Respondent. (Action No. 2.) (And a Third-Party Action.)

Third Department, June 11, 1992

**APPEARANCES OF COUNSEL**

*Aaron J. Broder, P. C. (Alexander, J. Wulwick* and *Kevin L. Mosley* of counsel), for appellant.

*Walker & Bailey (Lawrence R. Bailey, Jr.,* of counsel), for Consolidated Rail Corporation, respondent.

*Ford Marrin Esposito & Whitmeyer (William P. Ford, David M. Somlyo* and *Jan H. Duffalo* of counsel), for Bradley Corporate Park, respondent.

*Johnston & McShane, P. C. (Kenneth E. Moffett, Jr.,* and *Bruce W. McShane* of counsel), for Town of Clarkstown, respondent.

**OPINION OF THE COURT**

HARVEY, J.

At approximately 8:55 A.M. on January 9, 1986, plaintiff, a

stockworker, was driving to his job with Accelerated Sales Inc. (hereinafter Accelerated) when his car was struck by a train owned by defendant Consolidated Rail Corporation (hereinafter Conrail) and operated by defendant Kenneth Michel. Accelerated's offices were located within defendant Bradley Corporate Park (hereinafter Bradley), an industrial park in defendant Town of Clarkstown (hereinafter the Town), Rockland County. Pineview Road provides the sole access to the industrial park. Pineview Road runs generally east to west and intersects two sets of railroad tracks which run generally north to south. The subject collision occurred at the intersection of Pineview Road and the railroad tracks. The weather conditions that day were clear and dry and the police accident report indicated that from the intersection where plaintiff's car was hit there was "a clear view [of] the tracks for at least 0.7 mile[s] south". Plaintiff was familiar with this intersection because he began working for Accelerated over three weeks prior to the accident and thus had to travel the railroad crossing at least twice each of the 18 days he had worked during this period. Witnesses to the accident disputed whether plaintiff came to a full stop at the crossing, simply drove his car into the train or actually passed stopped vehicles to drive up onto the crossing and then tried to back out of the train's path. Because of the injuries sustained in the collision, plaintiff has no memory of the accident.

Plaintiff, through his conservator, commenced action No. 1 against various defendants, including Conrail, Michel, John Garofalo (who was one of Conrail's road foremen) and Bradley. Various of these defendants interposed cross claims against each other. Conrail, Michel and Garofalo apparently commenced a third-party action against Accelerated. Plaintiff commenced action No. 2 against the Town.[1] Thereafter, a jury trial of these actions was held. At the close of plaintiff's case, Supreme Court granted motions by, among others, the Town and Bradley to dismiss the complaint against them. Plaintiff filed notices of appeal from the judgments dismissing these complaints. On appeal he confines his argument to the dismissals in favor of the Town and Bradley. At trial, the third-party action against Accelerated was discontinued as was

---

1. Although a complaint in action No. 2 is not contained in the record, it appears that plaintiff also brought suit against Rockland County and the hamlet of West Nyack. It is not clear whether either of these parties appeared. In any event, these parties did not participate at trial and no further mention is made of them.

plaintiff's action against Michel and Garofalo. Thus, only plaintiff and Conrail remain in the case. The jury found that Conrail was negligent, but that its negligence was not the proximate cause of the accident. Plaintiff appeals from the judgment entered in Conrail's favor.

One of the issues sharply disputed at trial was the presence or absence of warning signs or devices at or before the railroad crossing where the accident occurred. In dismissing the complaints against the Town and Bradley at the close of plaintiff's case, Supreme Court held that even if these parties failed in any statutory[2] or common-law duty to warn, said conduct could not, as a matter of law, be the proximate cause of the accident due to plaintiff's familiarity with the railroad crossing. Plaintiff disputes this ruling and argues that the fact that he drove through the crossing at least 36 times is insufficient to show that he was so clearly aware of the crossing that it could be presumed as a matter of law that he was actually aware of the danger as he approached it.

It has been held that the absence of a warning sign cannot be excluded as a cause unless the plaintiff's awareness of the condition would have led to the same course of conduct as if the sign had been present (see, Koester v State of New York, 90 AD2d 357, 362). Accordingly, a driver's familiarity with an intersection may supersede any negligence in failing to erect warning signs (see, Alexander v Eldred, 63 NY2d 460, 467-468; Atkinson v County of Oneida, 59 NY2d 840, 842). Unlike cases relied upon by plaintiff which involved evidence of drivers making six or fewer trips past signs at sporadic intervals and under contrasting conditions (see, e.g., Alexander v Eldred, supra; Koester v State of New York, supra), the case at bar involved plaintiff making at least 36 regular trips through the intersection under conditions similar to those

---

2. Plaintiff's statutory claim is premised primarily on the Railroad Law. Plaintiff argues that pursuant to Railroad Law §§ 53 and 53-a, Conrail and the Town each had a duty to install and maintain signs warning motorists of the railroad crossing because Pineview Road was, although owned by Bradley, a public highway within the meaning of the Railroad Law. It should be noted that in order for an undedicated road to be considered a public highway there must be evidence showing public use and maintenance and repair of the road for a period of over 10 years (see, Provencher v Town of Saranac, 168 AD2d 770). Here, while there was evidence of public use of Pineview Road for more than 10 years, the uncontradicted proof at trial was that there was no maintenance performed by the Town on the road prior to 1984, two years before the subject accident.

existing on the day of the accident. Consequently, we conclude that Supreme Court's ruling on this issue was not erroneous.[3]

■ Upon examining plaintiff's challenges to Supreme Court's jury charge, we conclude that no reversible error occurred. Although plaintiff criticizes Supreme Court's charge concerning the presence and/or absence of warning signs or devices at the crossing in relation to Conrail's duty of care, we note that the charge itself almost exactly mirrored the Pattern Jury Instructions for this subject *(see,* PJI 2:175). Moreover, in reviewing the charge, we find it to be correct because it "adequately presented the pertinent legal principles to be applied and the factual issues to be resolved" *(Bartlett v General Elec. Co.,* 90 AD2d 183, 186, *appeal dismissed* 60 NY2d 587; *see, McAteer v Arden Hill Hosp.,* 170 AD2d 758, 760).

■ Plaintiff also challenges Supreme Court's decision to charge Vehicle and Traffic Law § 1180 (a), (b) and (e) to the jury[4] because he claims there was no evidence that he was speeding prior to the accident. While it is true, however, that some of plaintiff's evidence indicated that plaintiff was driving responsibly at the time of the accident, there was also substantial testimony from defendants' witnesses that plaintiff was driving recklessly. Two of defendants' witnesses testified that plaintiff passed stopped cars and tried to cross the tracks before the accident occurred. Michel testified that plaintiff drove onto the tracks and was hit just after he began to back off the tracks. Notably, the police accident report states that plaintiff's car was found after the accident with its backup lights activated. In our view, this testimony was sufficient to allow the jury to infer that plaintiff was driving at an unreasonable speed under the circumstances because he was either trying to beat the train through the crossing or because he

3. Additionally, we reject plaintiff's contention that he should have been held to a lesser burden of proof on the issue of his awareness of the crossing because of his amnesia. Supreme Court's holding on this issue was based upon the number of trips plaintiff actually made over the crossing, not on plaintiff's memory of his awareness of the crossing *(see, Smith v Stark,* 67 NY2d 693, 695).

4. Vehicle and Traffic Law § 1180 (a) states that a person shall not drive faster than is prudent under the conditions taking into account actual and potential hazards then existing. Vehicle and Traffic Law § 1180 (b) states that unless a special hazard exists, no one shall drive faster than 55 miles per hour. Vehicle and Traffic Law § 1180 (e) provides that every vehicle shall "drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing".

could not stop until he was on the tracks and was attempting to back up off the tracks when he was hit *(cf., Fieldy v Weimer,* 169 AD2d 961, 962). Therefore, charges as to Vehicle and Traffic Law § 1180 (a) and (e) were appropriate *(see, McKenna v Ether,* 177 AD2d 756). The charge on Vehicle and Traffic Law § 1180 (b) was not inappropriate because, although the reference to the 55-miles-per-hour speed limit was inapplicable to this case, this subdivision does require drivers to reduce their speed whenever a special hazard exists. In any event, even if the instruction to Vehicle and Traffic Law § 1180 (b) was erroneous, the error was not "so fundamental as to warrant a new trial" *(McAteer v Arden Hill Hosp.,* 170 AD2d 758, 760, *supra).*

The remaining arguments raised by plaintiff, including those challenging Supreme Court's evidentiary rulings, have been examined and have been found to be unavailing.

MIKOLL, J. P., YESAWICH JR., LEVINE and MERCURE, JJ., concur.

Ordered that the judgments are affirmed, with costs.