OPINION OF THE COURT
Hancock, Jr., J.
Defendant was indicted for forcible rape and robbery, first degree sexual abuse and other crimes for three separate incidents in Queens in which he attacked different women at knifepoint. He pleaded not guilty by reason of insanity. At the jury trial, the only issue was whether defendant lacked the mental capacity to commit the crimes by reason of mental disease or defect (Penal Law § 40.15). Defendant was convicted on all charges, and the Appellate Division affirmed unanimously.
In his appeal to our Court, defendant argues that there should be a reversal because of the trial court’s restriction of his counsel’s right to consult with his own psychiatric expert witness in connection with the cross-examination of the People’s expert and concerning the possible presentation of surrebuttal testimony. We agree and conclude that there should be a new trial. For reasons which follow, however, we do not agree with defendant that the indictments should be dismissed for violation of the speedy trial rule (CPL 30.30). Nor do we find merit in defense counsel’s contention that the trial court was required to permit him to audiotape the examination of his client by the People’s clinical psychologist.
I
At trial, defendant conceded that he had committed the offenses and called witnesses only on the issue of his mental condition. The principal defense witness was Dr. Stephen Teich, a psychiatrist, who gave his expert opinion, based on several interviews with defendant, that defendant was suffering from post-traumatic stress disorder. Defendant, as a child, had been sexually abused by his brother. In 1967, at the age of 19, he had seen intense combat as a Marine in Vietnam and had had several emotionally disturbing experiences. Defendant’s history after his discharge included periods of drug and alcohol abuse, attempts at suicide and a period of psychiatric treatment in a Veteran’s hospital. According to Dr. Teich, defendant was overwhelmed with feelings of resentment, hos *96 tility, self-hatred and anxiety. In Teich’s opinion, he was suffering from post-traumatic stress disorder and lacked the substantial capacity to know and appreciate the nature, consequences and wrongfulness of his acts.
When Dr. Teich had completed his direct testimony, the People for the first time sought permission pursuant to CPL 250.10 (3) to have defendant examined by their own expert, Dr. Erwin Parson, a clinical psychologist and certified psychotherapist. The court granted the application and directed that it be conducted that same evening. Because of the time constraints, Dr. Parson could not prepare the written report which, under CPL 250.10 (4), the examining doctor is required to prepare and furnish to the defense. Defense counsel, therefore, requested permission to audiotape the examination for the purpose of discussing it with Dr. Teich. The court denied this request, concluding that to allow the tape recording "would be * * * like having Dr. Teich there”, something not permitted by CPL 250.10 (3).[1]
After some discussion, the court, over defendant’s objection, made the ruling which is in dispute: that defense could not talk to Dr. Teich about Dr. Parson’s examination of defendant until Dr. Teich was "completely through” as a witness, and that if he did so, Dr. Teich would be prohibited from testifying in surrebuttal. Dr. Parson, in his testimony, agreed that defendant was suffering from post-traumatic stress disorder. In his opinion, however, when defendant committed the crimes he did not lack the capacity to know and appreciate the nature and consequences of his acts. The defense did not call Dr. Teich in surrebuttal.
Defendant’s trial, which took place in May 1987, was preceded by a prolonged period during which defendant was legally found to be lacking in the capacity to understand the proceedings against him or to assist in his defense and, thus, incompetent to stand trial. The period relevant to defendant’s CPL 30.30 contention begins on April 10, 1985 when the trial court — Supreme Court, Queens County — found defendant unfit to stand trial. By this order, which was based on psychiatric examinations and a hearing, the court committed defendant to the custody of the Commissioner of Mental Health for a *97 period of six months. Similar incompetency proceedings were also being conducted in New York County in connection with other charges pending against defendant. On April 23, 1985, Supreme Court, New York County, found defendant unfit to stand trial and committed him to the custody of the Commissioner of Mental Health for a period not to exceed one year. The Commissioner, operating under both the Queens County and New York County orders, directed that defendant be sent to the Mid-Hudson Psychiatric Center.
On October 10, 1985, the Queens County six-month commitment order expired. Defendant remained in Mid-Hudson, however, under the New York County order which still had several months of the one-year commitment remaining before expiration. On March 4, 1986 the director of Mid-Hudson notified New York County Supreme Court that the hospital psychiatrists had found defendant fit to proceed to trial. On March 25 pursuant to New York County Supreme Court’s direction, defendant was incarcerated in the Bellevue Hospital prison psychiatric ward for psychiatric treatment and tests. New examinations were ordered to determine defendant’s competency. On July 7, 1986 the examining doctors reported that in their opinion defendant was fit to proceed. On September 24, 1986, Supreme Court, New York County, found defendant fit to proceed to trial and on that day accepted his plea of guilty to the New York County charges.
On September 24, 1986, Mid-Hudson for the first time notified Queens County Supreme Court (the trial court in the instant proceeding) and the Queens County District Attorney’s office that Mid-Hudson had found defendant to be competent and had discharged him.[2] The People announced their readiness for trial on October 16,1986, and defendant was returned to Queens for a new competency examination. On November 17, 1986, Queens County Supreme Court found defendant competent to proceed to trial.
Defendant moved to dismiss the charges against him because of the District Attorney’s failure to announce readiness *98 within the six-month period prescribed by CPL 30.30 (1) (a).[3] Supreme Court, Queens County, denied the motion on June 11, 1987 and in a written decision granted defendant’s motion for reargument on July 2. On reargument, the court adhered to its original decision and concluded that inasmuch as defendant was incompetent by virtue of the order of Supreme Court, Queens County, from April 10, 1985 until November 17, 1986, all of the time from April 10, 1985 until October 16, 1986, when readiness was announced, was excludable from the six-month limitation as "proceedings for the determination of competency and the period during which defendant is incompetent to stand trial” under CPL 30.30 (4) (a). The Appellate Division agreed with the denial of defendant’s speedy trial motion but did so on the ground that defendant’s successive detentions in Mid-Hudson and Bellevue Hospital made defendant unavailable for trial and that his presence could not be obtained with due diligence (see, CPL 30.30 [4] [c]). It found no impropriety in the trial court’s limitation on consultations between defense counsel and Dr. Teich.
II
Claimed Trial Errors
Preliminarily, we note that the trial court did not act improperly in declining to direct that Dr. Parson’s examination of defendant be tape-recorded. Defendant argues that by the terms of CPL 250.10 (4) he had the absolute right to the tape recording. No authority is cited for the proposition and the statute does not support it. While the statute states that a written report of the psychiatric examination must be prepared and made available to both counsel, tape-recording of the examination is not mandatory. On the contrary, the statute provides that '[n]o transcript or recording of the examination is required, but if one is made, it shall be made available to both parties prior to the trial” (CPL 250.10 [4] [emphasis added]). We agree with the People that the section is designed to further the interchange of expert information *99 between the prosecutor and defense counsel by directing that both counsel be given access to the written report of the examination and to the transcript or recording, if one has been required. The decision of whether to require a transcript or recording, however, is left to the discretion of the Trial Judge. We need not decide whether the court abused its discretion by denying defendant’s request to audiotape because we conclude that there is an alternative ground for reversal.
Defendant’s principal ground for seeking a new trial is the ruling that defense counsel could not discuss the prosecution’s rebuttal evidence (Dr. Parson’s expert testimony concerning his examination of defendant) with his own expert, Dr. Teich, until after Dr. Teich had finished all his testimony in the case. This ruling effectively precluded defense counsel from offering any surrebuttal evidence if he chose to enlist the assistance of his own expert in developing and conducting the cross-examination of the People’s expert. Defense counsel was given a Hobson’s choice: either consult with Dr. Teich about Dr. Parson’s testimony and forgo any surrebuttal or refrain from any consultation with Dr. Teich and be free to call him as a surrebuttal witness.
We agree with defendant that the ruling interfered significantly with his right to make an effective presentation on the only issue before the jury — his affirmative defense of insanity (Penal Law § 40.15). As the Supreme Court has emphasized, "when the State has made the defendant’s mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant’s ability to marshal his defense” (Ake v Oklahoma, 470 US 68, 80). Indeed, the Court has cautioned that "without the assistance of a psychiatrist to * * * present testimony, and to assist in preparing the cross-examination of a State’s psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high” (id., at 82).
To make defense counsel in this case undertake the risky and critical task of cross-examining the People’s psychiatric expert without Dr. Teich’s advice and assistance put defendant at a serious disadvantage. Requiring him to forgo any discussion of Dr. Parson’s testimony with Dr. Teich if he planned to call Teich to rebut that testimony made an effective surrebuttal practicably impossible. Moreover, as defen *100 dont points out, to prevent one psychiatric expert from knowing the basis of the other expert’s opinion on the question of defendant’s sanity in a criminal case is incompatible with the legislative policy evident in CPL 250.10 (3) and (4) of assuring that each party has unrestricted access to the relevant psychiatric opinions and information of the other. It can never be known, of course, what conclusion the jury would have reached if defendant had had the benefit of his expert’s advice in cross-examining Dr. Parson or had been able to frame and present an appropriate surrebuttal. The damage to defendant’s case from the ruling is not subject to calculation.
The People contend, however, that the trial court’s directive was a proper exercise of its discretion. They allude to the discretion permitted the trial court to prevent consultation between the defendant and his counsel during defendant’s cross-examination (see, e.g., People v Narayan, 58 NY2d 904). But this case involves a totally different question — the right of defense counsel to talk with his own expert while he is cross-examining the opposing expert. The People also cite decisions upholding the trial court’s discretion to exclude witnesses from the courtroom while other witnesses are testifying (see, e.g., People v Cooke, 292 NY 185, 190-191; Levine v Levine, 56 NY2d 42, 49-50). Such cases, however, involve witnesses to the events or facts in dispute where the truth-seeking function of the trial process is furthered by "preventing one prospective witness from being taught by hearing another’s testimony” (6 Wigmore, Evidence § 1838, at 461 [Chadbourn rev 1976]).
The same reasons for exclusion do not apply to expert witnesses. It has been pointed out that "the presence in the courtroom of an expert witness who does not testify to the facts of the case but rather gives his opinion based upon the testimony of others hardly seems suspect and will in most cases be beneficial, for he will be more likely to base his expert opinion on a more accurate understanding of the testimony as it evolves before the jury” (Morvant v Construction Aggregates Corp., 570 F2d 626, 629-630 [6th Cir], cert dismissed 439 US 801; see, United States v Kosko, 870 F2d 162, 164 [4th Cir]). Moreover, we note that the Federal Rules of Evidence, although not binding, support defendant’s position. While a fact witness under the Federal Rules must be excluded on the request of a party, an expert witness is generally exempted from the exclusion requirement as "a person whose presence is shown by a party to be essential to the presentation of the party’s cause” (Federal Rules Evid, *101 rule 615 [3]; see, e.g., Mayo v Tri-Bell Indus., 787 F2d 1007, 1013 [5th Cir]; Trans World Metals v Southwire Co., 769 F2d 902, 910-911 [2d Cir]). We conclude that in the circumstances of this case the court’s ruling constituted reversible error.
Ill
CPL 30.30 Motion
The question pertaining to the denial of defendant’s speedy trial motion turns on whether the courts below should have excluded from the six-month limitation the time that defendant was incompetent to proceed to trial. We conclude that this exclusion was proper under CPL 30.30 (4) (a) which, in pertinent part, provides:
"In computing the time within which the people must be ready for trial * * * the following periods must be excluded:
"(a) a reasonable period of delay resulting from other proceedings concerning the defendant, including but not limited to: proceedings for the determination of competency and the period during which defendant is incompetent to stand trial” (emphasis added).
The proceedings pertaining to defendant’s competency were instituted by defendant. On April 10, 1985, Queens County Supreme Court, after a hearing at which defendant called three psychiatrists and the People one, determined in a written decision that defendant was an incapacitated person, unable to assist counsel in his defense and, therefore, unfit to proceed to trial. On April 23, 1985, Supreme Court, New York County, in a similar proceeding found that defendant "lack[ed] the capacity to understand the proceedings against him or to assist in his own defense” and adjudicated him to be an incapacitated person. Although the Queens County six-month commitment order expired on October 10, 1985, that court’s finding of incompetency remained unaltered as did the similar finding by New York County Supreme Court which was in effect until September 24, 1986 when that court found defendant fit to proceed. The Queens County finding of unfitness remained in effect until that court’s finding of fitness to proceed on November 17, 1986, about a month after the prosecutor’s statement of readiness.
Defendant argues that the Queens County District Attorney *102 failed in his duty to monitor the status of defendant in Mid-Hudson and that much, if not all, of the time following the expiration of the Queens County commitment order on October 10, 1985 should not be exempted. We need not address the issue of the Queens County District Attorney’s monitoring of defendant’s status because defendant was legally held to be unfit under the New York County order which remained in effect until September 24,1986.
The speedy trial statute specifically recognizes as a separate factor resulting in delay warranting an exemption from the time limitation “the period during which defendant is incompetent to stand trial” (CPL 30.30 [4] [a] [emphasis added]) — i.e., when, because of an existing determination of defendant’s unfitness to proceed due to his inability to understand the proceedings against him or to assist in his defense, the prosecution may not legally proceed to trial and conviction (see, Pate v Robinson, 383 US 375, 378, 387). It is the delay resulting from defendant’s determined condition and status as an incapacitated person and, as such, his unfitness to proceed to trial that is exempted from the time limitation. We need not decide the abstract question raised by the dissent (dissenting opn, at 109-110) which would be presented if defendant’s status as incompetent had been determined only by Queens County Supreme Court — i.e., whether the period of the subdivision (4) (a) exemption should be curtailed as unreasonable because the Queens County prosecutor was not kept advised of defendant’s status and did not move for a new competency determination. Here, defendant’s status as incompetent was the subject of a parallel Supreme Court order. There is no question concerning the validity or the effect of the outstanding determination of New York County Supreme Court that defendant was an incapacitated person and remained unfit to proceed until that court’s finding of competency on September 24, 1986,[4] and no contention that the resulting period of delay was unreasonable. We hold only, under the unique circumstances of this case where defendant remained an incapacitated person by virtue of the interrelated effect of two orders of New York State Supreme Court, that the period properly exempted *103 under CPL 30.30 (4) (a) brought the total time to be counted against the prosecution to less than 180 days.
The dissent’s proposition that "[i]t is elementary that a judicial finding of incompetency [i.e, the New York County Supreme Court order] is binding only in the proceeding in which it is made” (dissenting opn, at 107), for which it cites no pertinent authority, is clearly contrary to fundamental principles of criminal justice. What the proposition overlooks is that the New York County determination of incompetency had an effect beyond the particular CPL article 730 proceeding in which it was made. The order was by no means merely procedural; it was a substantive factual and legal determination with respect to a specific defendant’s mental and emotional capacity made by a court having jurisdiction over the matter after proceedings in which that defendant’s capacity was the very issue in dispute between the State and the defendant. Whether the Queens County Supreme Court would have been legally bound to give effect to the New York County order’s finding of unfitness as an issue determined by that court or by simply adopting the commonsense conclusion that if a person was legally found to be incompetent in New York County the same person would necessarily be incompetent in Queens County, we need not decide. What is important is that the New York County Supreme Court determination, as long as it remained in effect, would have been a legal and constitutional bar to defendant’s prosecution and conviction in Queens County (see, Pate v Robinson, supra, at 378, 387).[5]
The order should be reversed and a new trial ordered.

. CPL 250.10 (3) provides that defendant has a right to have his counsel present at the examination as an observer and that the District Attorney may also be present. There is no provision for the presence of the opposing psychiatrist or psychologist.

. CPL 730.50 (2) and 730.60 (2) required Mid-Hudson to notify the Queens County Supreme Court and the District Attorney when it retained defendant beyond the six-month commitment order and later when it discharged defendant to Bellevue. Because of Mid-Hudson’s failure to comply with its statutory obligations, the Queens County Supreme Court and District Attorney were not apprised of defendant’s status until September 24.1986.

. Between December 8, 1983, the date of defendant’s arrest, and April 10, 1985, the date of the Queens County finding of unfitness and order of commitment, the parties agree that only 36 days are chargeable to the People, the balance being exempted by reason of motions and other proceedings. The only period in dispute is that between October 10, 1985, the expiration date of the Queens County six-month commitment and October 16,1986, the date of the statement of readiness.

. We note, moreover, as the People point out, that even if New York County Supreme Court had made its determination of competency as early as July 7, 1986 upon the bare receipt of the reports of defendant’s fitness from the examining psychiatrists, without any further proceedings, there would have been more than enough excludable time to bring the total time counted against the prosecution to well under 180 days.

. Nor can we subscribe to the dissent’s notion (dissenting opn, at 108) that if the Queens County District Attorney and Supreme Court had been apprised of defendant’s status, they would have been obligated, notwithstanding the effectiveness of the New York County order, to expend the time and resources to pursue their independent and separate CPL article 730 proceedings while the defendant was already in Bellevue Hospital undergoing competency testing by psychiatrists appointed by New York County Supreme Court. Although unnecessary to our decision, it is doubtful at best that the Legislature could have contemplated such an unrealistically rigid interpretation of CPL 30.30 (4) (a). Here, of course, Mid-Hudson never notified the Queens County District Attorney or Supreme Court (see, supra, at 97, n 2) of defendant’s discharge to Bellevue for additional testing.