Bellacosa, J.
(dissenting). We respectfully dissent and vote to affirm the conviction for attempted robbery in the first degree and criminal possession of a weapon in the fourth degree.
A bench warrant for defendant’s arrest had to be issued on December 7, 1987 because, after having been released on his own recognizance, he failed to return to court on two separate occasions to answer criminal charges. He was finally apprehended and returned on the warrant on April 28, 1988. Defendant, as appellant before this Court, now contends that the time during which he violated the terms of his release should be counted against the People’s responsibility to be ready for trial within a prescribed period. This bold argument succeeds and the indictment against him is dismissed because the People failed to use "due diligence” to go out and again bring him back to court.
In our view, this result contradicts the spirit and letter of CPL 30.30 (4) (c), the ready trial rule. That statute does not retain the requirement of prosecutorial due diligence in circumstances such as these, where defendants render themselves fugitives necessitating that the People seek a judicial warrant for their arrest and return to stand trial. To hold the People accountable for this time relieves defendants of their singularly personal responsibility to honor the original court process that freed them pending criminal charges. This statutory construction grants defendants an irresistible incentive not to appear to answer criminal charges because the reward is the ultimate, ironic windfall — dismissal of those very charges. In like fashion, the Legislature has created a parallel universe with Family Court Act § 340.1, which is the func *157 tional equivalent of CPL 30.30, and thus provides inducements to incorrigibility and disregard for the law and its processes by countless juveniles (see, Matter of Randy K., 77 NY2d 398; see also, Matter of Natasha C., 80 NY2d 678).
The ready trial rule, CPL 30.30 (4) (c), was amended in 1984 to exclude "the period extending from the day the court issues a bench warrant pursuant to section 530.70 because of the defendant’s failure to appear in court when required, to the day the defendant subsequently appears in the court pursuant to a bench warrant or voluntarily or otherwise”. The demise of the due diligence requirement in situations in which a bench warrant has been issued is also readily deducible from People v Patterson (38 NY2d 623), which was decided the same day as People v Sturgis (38 NY2d 625). In Patterson, the defendant, who was employed at a parking lot "in close proximity to the county jail” during the time that there was an outstanding bench warrant for his arrest due to his failure to appear in court, indicated that he was waiting for the authorities "to come and get him” (38 NY2d, supra, at 625). Without discussing due diligence, the Court held that this period of time was not to be counted against the People because the defendant was attempting to avoid prosecution (id.). Notably, Patterson has recently been construed as holding that defendants do not have to act affirmatively — if they fail to appear in court as required, the People are not charged with that time (see, People v Jackson, 150 AD2d 609, 610; People v Yanez, 128 Misc 2d 716, 719). To relegate Patterson into solitary oblivion — "no bearing on the meaning or significance of the 1984 amendment to CPL 30.30 (4) (c)” (majority opn, at 152, n 1) — is puzzling, because if the Legislature did not overrule it, this Court should not do so sub silentio in this context. Since the Legislature is presumed here to have been aware of it and did not touch it, apparently because its holding is consistent with the amendment, it should still be binding and useful law.
In any event, we all agree that this Court’s decision in People v Sturgis (38 NY2d 625, supra) was the impetus for the 1984 amendment. However, the conclusion next drawn by the Court that the amendment addresses only the narrow issue of reducing "the People’s duty to show a causative relationship between the defendant’s absence and their delay” (majority opn, at 153) is too restrictive and lacks authoritative statutory construction support.
*158 The definitions and categories of excludable or includable time and circumstances in this complex statute are not mutually exclusive and must each be given effective meaning (Anglin v Anglin, 80 NY2d 553, 555-556). The central thrust of the amendment and the Legislature’s manifest intent were evidenced in the most overt way — an explicit overruling of a prior precedent of this Court.
It is axiomatic that legislative intent is “collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view” (1 Kent, Commentaries on American Law, at 462, quoted in Matter of Di Brizzi, 303 NY 206, 220). The remedial objective of the statute must be considered in construing a statute (see, Matter of Toomey v New York State Legislature, 2 NY2d 446, 448; McKinney’s Cons Laws of NY, Book 1, Statutes § 95). A standard proposition of statutory construction is that the courts should not interpret in such a way that produces “absurd” results (Milbrandt v Green Refractories Co., 79 NY2d 26, 36; People v Boston, 75 NY2d 585, 588; Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 675). As the Court acknowledges, the underlying purpose of the amendment to CPL 30.30 (4) (c) was “ 'to lessen the People’s burden in discharging their “speedy trial” obligation where a defendant has absconded’ ” (majority opn, at 153, quoting People v Bolden, 174 AD2d 111, 115). This goal is turned on its head if the People must exert due diligence in returning a defendant against whom a bench warrant has been issued for failure to appear in court as required to answer criminal charges. The People’s burdens are increased, not "lessened,” by the Court’s construction of the amendment.
Weighty legislative history of the 1984 amendment supports the argument tendered by the People, whose position was accepted by the Appellate Division and which we, too, find persuasive. The Governor’s Approval Memorandum stated that the amendment excludes the period that a bench warrant is outstanding against defendants who are absent or unavailable because they have “escaped from custody or [have] failed to appear in court when required” (1984 McKinney’s Session Laws of NY, at 3628). The absence of any discussion of an additional requirement of a showing of prosecutorial due diligence is strong evidence that none was thought or intended to survive. Additional support for this view is found in several other legislative memorandums supporting the amendment (see, e.g., Letter from Dept of Correctional Servs, June 8, 1984, *159 Bill Jacket, L 1984, ch 670 [time when defendant is a fugitive is excluded]; Mem of State Grim Justice Coordinator [Kurlander], June 11, 1984, Bill Jacket, op. cit. ["all of the time during which a bench warrant is outstanding against the defendant will expressly not be counted” (emphasis added)]; Letter of State Commn of Correction, June 22, 1984, Bill Jacket, op. cit. [time where defendant is a fugitive is excluded]), as well as in memorandum submitted in opposition (see, e.g., Letter from Legis Representative of Legal Aid Socy, June 18, 1984, Bill Jacket, op. cit. [exclude time where "defendant is absent or unavailable because either he has escaped from custody or, his having been released, he fails to appear in court when required”] [emphasis added]).
The Court cites two bill jacket memorandums to support the reversal in this case (majority opn, at 153). While those items assume that the due diligence requirement survived the statutory amendment, insufficient attention is given to the underlying current of those memorandums — strong dissatisfaction with the retention of the due diligence burden in instances such as this case. Indeed, the memorandum of the Office of Court Administration includes a recommendation that the requirement be clearly removed (Legislative Mem from Off of Ct Admin, May 31, 1984, Bill Jacket, op. cit. [communicating opposition of the Advisory Committee on Criminal Law and Procedure "to the extent that it continues to condition excludability of the period during which a bench warrant is outstanding upon the people’s exercise of due diligence in attempting to locate defendant”]). In any event, none of the memorandums cited by the majority or this dissent constitutes an authoritative or unequivocal manifestation of the Legislature’s intention to retain or abandon the due diligence requirement when a bench warrant situation is interposed. The job of unearthing that intent rests uniquely and ultimately on this Court, which may not draw definitive inferences from the collective or competing viewpoints of various nonneutral special interest depositors into the legislative "Bill Jacket”.
Public policy considerations, manifest in the legislative history, further fuel the conclusion that due diligence is irrelevant in the bench warrant situations. Imposition of that requirement on the People induces and makes it worthwhile for defendants to abscond, since the massive number of outstanding bench warrants renders it not only highly unlikely, but near to impossible, that any of such defendants will be returned other than accidentally or for new criminal conduct *160 within the ready time limits (see, Letter from Richmond County Dist Attorney, June 13, 1984, Bill Jacket, op. cit. [as of December 1983 more than 300,000 outstanding bench warrants in the City of New York]; Letter from New York State Defenders Assn. Inc., June 12, 1984, Bill Jacket, op. cit. [bill should be rejected "because it may actually encourage defendants to abscond”]; Legislative Mem from Off of Ct Admin, May 31, 1984, Bill Jacket, op. cit.). This is precisely the undesirable consequence that the Legislature targeted in overruling People v Sturgis (38 NY2d 625, supra; see, Letter from Off of Mayor of City of NY, June 13, 1984, Bill Jacket, op. cit.; Letter from Nassau County Dist Attorney, June 11, 1984, Bill Jacket, op. cit). Moreover, it is hard to imagine anything more self-defeating than the expenditure of finite prosecutorial resources to chase after hundreds of thousands of bench warrant scoffers in lieu of using those resources to try the cases themselves. Indeed, and most unfortunately, prosecutors and courts are likely to be far more wary and reluctant to allow for pretrial releases in the teeth of the likely denouements of this interpretation of CPL 30.30. This does not well serve defendants’ interests or that of the fair and speedy administration of justice.
We completely support the view that the ready trial statute strikes an important balance, including necessary protections to defendants against prosecutorial delays (see, People v Santana, 80 NY2d 92, 110 [concurring opn, Titone and Bellacosa, JJ.]). The statute is designed to accomplish its laudable goals, however, without superimposing a self-contradictory due diligence requirement on the People in these circumstances — a time factor attributable solely to the actions of released defendants, who are either negligently or intentionally scornful of the law’s express dictates to them.
We would affirm the order of the Appellate Division upholding the conviction.
Acting Chief Judge Simons and Judges Kaye and Hancock, Jr., concur with Judge Titone; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judge Smith concurs.
Order reversed, etc.