■ STATE OF NEW YORK, Respondent, v DAVID PASSALACQUA, Individually and Doing Business as DAVE'S SERVICE STATION, Respondent, and SUNOCO, INC., Appellant. [797 NYS2d 576]—

Cardona, P.J. Appeal from an order of the Supreme Court (Sheridan, J.), entered January 12, 2004 in Albany County, which, inter alia, granted plaintiff's motion for partial summary judgment against defendant Sunoco, Inc. and granted defendant David Passalacqua's cross motion for summary judgment against defendant Sunoco, Inc. as to indemnification.

This Navigation Law article 12 action concerns property located in the City of Geneva, Ontario County. In 1959, the property was purchased by defendant Sunoco, Inc.'s predecessor in interest and was thereafter operated as a Sunoco gas station. In 1981, Sunoco removed and replaced three 4,000 gallon underground gasoline storage tanks (hereinafter USTs). In February 1983, Sunoco sold the property to defendant David Passalacqua, who operated a service station on the premises. Included in the sale were the three replacement 4,000 gallon USTs. According to Passalacqua, the only type of gasoline he ever stored or sold thereafter was unleaded gasoline. In 1988, USTs at Atlantic A-Plus Mini Mart, a convenience store and gas station across the street from Passalacqua's property, failed a tightness test and were replaced. When the leaking tanks were excavated, it was evident that the tanks had discharged several thousand gallons of petroleum product into the surrounding environment. Plaintiff subsequently hired Marcor of New York to conduct a soil gas survey and drill groundwater monitoring wells to investigate the extent of the discharge by Atlantic. During the course of that investigation, Marcor detected a significant amount of free-floating gasoline and petroleum discharge, most notably surrounding Passalacqua's USTs.

In 1992, Passalacqua removed the three 4,000 gallon USTs, which reportedly appeared to be in good condition. In an effort to determine the date and source of the discharge, plaintiff authorized Marcor in 1994 to hire Global Geochemistry Corporation to conduct a chemical analysis. That analysis revealed, among other things, the presence of five lead alkyls which Global indicated were mixed together and added to gasoline

manufactured prior to 1980. In analyzing the data, Global concluded that the spill appeared to be a mixture of pre-1980 gasoline, along "with a relatively recent release, possibly less than five years [from the date of the August 1994 report]." The New York Environmental Protection and Spill Compensation Fund thereafter spent $439,026.65 to clean the spill site, of which $281,900.52 was incurred within six years of the commencement of this action.

In March 1999, plaintiff commenced this action against defendants to recover the costs incurred in cleaning up the discharge. In its answer, Sunoco denied any responsibility for the discharge and asserted a cross claim against Passalacqua, who interposed an answer denying responsibility for the spill and asserting two counterclaims against plaintiff and five cross claims against Sunoco. Following discovery, the parties moved for summary judgment. Supreme Court granted plaintiff's motion for partial summary judgment against Sunoco, denied Sunoco's cross motion for summary judgment against plaintiff and Passalacqua and granted Passalacqua's cross motion for summary judgment against Sunoco with respect to his cross claim for indemnification. The court awarded plaintiff $281,900.52 and Sunoco appeals.

Initially, Sunoco argues that Supreme Court erred in granting plaintiff's motion for partial summary judgment against it. According to Sunoco, while plaintiff may have presented evidence indicating that some of the discharged petroleum was manufactured during the time that Sunoco owned the property, the proof submitted by its experts raised a question of fact on that issue. Additionally, Sunoco maintains that, even if some of the petroleum was manufactured during its ownership, plaintiff failed to establish, as a matter of law, that any of the petroleum was actually *discharged* during that time so as to establish Sunoco's liability as a matter of law.

In support of its motion, plaintiff relied primarily on affidavits from Peter Miller,* an engineering geologist employed by the Department of Environmental Conservation, and the 1994 study of monitoring wells issued by Global. With respect to whether the proof established that some of the discharged gasoline was *manufactured* prior to 1980, the Global report established, among other things, the presence of the five lead alkyls in the

* We note that, although Sunoco questions the admissibility of Miller's affidavits, Miller avers that the information contained therein is based upon his personal knowledge and a review of files compiled and maintained by the Department of Environmental Conservation in the regular course of business (*compare Jackson v Gas Co.*, 2 AD3d 1104, 1106 [2003]).

contaminant samples that were used in leaded gasoline prior to 1980. As a result of these and other findings, both Global and Miller concluded that at least a portion of the contamination occurred prior to 1980 and, given the location of the samples, was also discharged during Sunoco's ownership of the property. We find the proof sufficient to meet plaintiff's initial burden of establishing that a certain amount of the petroleum was manufactured and discharged during Sunoco's ownership and, therefore, the burden shifted to Sunoco to defeat the summary judgment motion (*see* Navigation Law § 181; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

In response, Sunoco argued that a question of fact existed as to whether some of the discharged petroleum was manufactured during its ownership due to evidence in the record indicating that, until the late 1980s or early 1990s, a certain amount of lead alkyls were added to gasoline as antiknock agents. While Sunoco's manager of fuels products, Helen Doherty, asserted that this fact raised the possibility that the fuel could have been manufactured after Sunoco no longer owned the property, the proof she submitted did not establish that the lead alkyls used as antiknock agents were identical to the five lead alkyls identified by Miller and the Global report as being used in gasoline prior to 1980. In addition, in reference to the affidavits from Sunoco's expert hydrogeologist, Patricia Newdeck, we note that her various opinions as to when the discharged petroleum was manufactured were either consistent with that of plaintiff's experts or "consisted primarily of speculative allegations with no independent factual basis [which] were insufficient to raise a triable issue of fact" (*Wallach v American Home Prods. Corp.*, 300 AD2d 576, 577 [2002]).

Sunoco also argues that, even if some of the petroleum was manufactured prior to 1980, the proof did not establish that it was actually discharged during its ownership. We are not persuaded. Newdeck, who did not state that she actually examined the subject USTs, discussed the *possibility* for lead alkyls to "transport" into unleaded gasoline when unleaded gasoline mixes with sludge and residual leaded gasoline builds up over time in the bottom of USTs. However, nothing submitted by Sunoco contradicted an affidavit from Passalacqua's expert chemist James Bruya, which affirmatively stated, inter alia, that the lead which collected in the bottom of the subject USTs "was not alkyl lead compounds that were added to make leaded gasoline." This statement is consistent with Miller's observation that, "if the sludge were the source of the lead found, any sludge that leaked out would have only contami-

nated the soils near the tank. Lead would not have been found widespread at the relatively high concentrations in the monitoring wells located a significant distance from the tanks." Inasmuch as Sunoco's proof failed to raise a material issue of fact to rebut plaintiff's prima facie showing that a discharge took place at the spill site during Sunoco's ownership, Supreme Court properly granted plaintiff's motion for partial summary judgment on the issue of Sunoco's liability under Navigation Law article 12 (*see* Navigation Law § 181 [1]).

Next, Sunoco alleges that its cross motion for summary judgment against Passalacqua should have been granted based on the theory of contractual indemnity despite Supreme Court's ruling that the cross claim "sounds only in negligence." Specifically, Sunoco claims that its use of the term "indemnification" in its cross claim for summary judgment is sufficient under liberal pleading rules to state a cause of action for contractual indemnification. However, even affording Sunoco's cross claim a liberal construction, it is clear that the term "indemnification" is only asserted with respect to the underlying theory of liability asserted in that claim, namely, negligence. Moreover, to the extent that Sunoco argues that Supreme Court should have granted it summary judgment against Passalacqua on the ground of statutory indemnity, we find Sunoco is not entitled to such relief due to its liability as a "person responsible for a discharge" under the Navigation Law (*see White v Long*, 229 AD2d 178, 181 [1997]). Accordingly, inasmuch as Sunoco has failed to plead and prove any theory of indemnity, Supreme Court properly denied Sunoco's cross motion for summary judgment against Passalacqua on that basis.

Turning to Supreme Court's grant of Passalacqua's cross motion for summary judgment against Sunoco with respect to his cross claim for indemnification, we find that reversal is warranted. A review of Passalacqua's submissions reveals that he failed to establish merit to that cross claim as a matter of law. In order to set forth a prima facie entitlement to indemnification pursuant to Navigation Law article 12, Passalacqua had to establish, as a matter of law, that he was not a "discharger" liable under the statute (*see* Navigation Law § 181 [5]; *State of New York v Avery-Hall Corp.*, 279 AD2d 199, 201 [2001]; *White v Long, supra* at 181). In that respect, Supreme Court specifically held that "neither Sunoco nor Passalacqua establishes as a matter of law that a spill did *not* occur during their respective ownerships of the spill site." Given the material questions of fact presented as to Passalacqua's liability, summary judgment as to Passalacqua's cross claim for statutory indemnity should not have been granted.

The remaining issues advanced by Sunoco have been examined and found to be without merit and/or unpreserved for appellate review. We note that, to the extent this issue is preserved, we find nothing in the common law or legislative history of Navigation Law § 181 that would preclude plaintiff from seeking joint and several liability against Sunoco and other responsible parties under these circumstances (*see e.g. State of New York v Markowitz*, 273 AD2d 637, 639 [2000], *lv denied* 95 NY2d 770 [2000]). Clearly, such a conclusion would not prevent Sunoco from ultimately seeking contribution from other liable dischargers, if any (*see Ravo v Rogatnick*, 70 NY2d 305, 313 [1987]).

Crew III, Spain, Mugglin and Rose, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant David Passalacqua's cross motion for summary judgment on his cross claim for indemnification against defendant Sunoco, Inc.; said cross motion denied; and, as so modified, affirmed.