■ STATE OF NEW YORK, Respondent, v 158TH STREET & RIVERSIDE DRIVE HOUSING COMPANY, INC., Defendant, and A.M.G. PROPERTIES COMPANY et al., Appellants. [956 NYS2d 196]—

Rose, J.P. Appeals (1) from an order of the Supreme Court (Teresi, J.), entered January 12, 2011 in Albany County, which, among other things, denied a motion by defendants A.M.G. Properties Company, Fanny Grunberg & Associates, LLC and Fanny Grunberg for summary judgment dismissing the complaint against them, (2) from a judgment of said court (O'Connor, J.), entered March 4, 2011 in Albany County, upon a verdict rendered in favor of plaintiff, and (3) from an order of said court (O'Connor, J.), entered November 17, 2011 in Albany County, which denied a motion by defendants A.M.G. Properties Company, Fanny Grunberg & Associates, LLC and Fanny Grunberg to, among other things, set aside the verdict.

Plaintiff commenced this action pursuant to Navigation Law article 12 in 1999, seeking to recover costs associated with the remediation of two oil spills in the City of New York. The first spill was discovered in 1997 in the crawl space under River Terrace Apartments, owned by defendant 158th Street & Riverside Drive Housing Company, Inc. The second spill was discovered when a water main break caused water to flow down an alleyway between River Terrace Apartments and an apartment building located at 779 Riverside Drive, owned by defendants A.M.G. Properties Company, Fanny Grunberg & Associates, LLC and Fanny Grunberg (hereinafter collectively referred to as defendants). Plaintiff alleged that the source of each spill was, at least in part, a fuel tank system located at 779 Riverside Drive. Following joinder of issue and discovery, the parties' cross motions for summary judgment were denied by Supreme Court (Teresi, J.) and, after trial, the jury returned a verdict in plaintiff's favor, awarding plaintiff the costs of remediation in the amount of $792,200.98 and assessing penalties aggregating $857,500.[1] Supreme Court (O'Connor, J.) denied defendants' posttrial motion to set aside the verdict. Defendants appeal from the denial of their motion for summary judgment, the

---

1. The action and all cross claims were discontinued against defendant 158th Street & Riverside Drive Housing Company, which agreed to pay $50,000 for its role in the initial spill.

judgment entered against them and the order denying their posttrial motion.[2]

Defendants contend that the action should have been dismissed at the summary judgment stage because plaintiff failed to preserve the sort of background documents normally generated by a contractor hired by the Department of Environmental Conservation (hereinafter DEC) to assist in the remediation and investigation of the source of the oil spills. Although the contractor's reports to DEC had previously been disclosed, it was not until 2010 that defendants sought any field notes or other background documentation from plaintiff that they believed would have been generated by the contractor. The contractor reported, however, that it had retained its files associated with the project for seven years and then destroyed them as part of its record retention policy. Supreme Court (Teresi, J.), in denying defendants' motion for dismissal of the complaint, concluded that defendants failed to establish the existence of any specific documents or that plaintiff's conduct was in bad faith, willful or contumacious. On appeal, defendants do not allege bad faith. Instead, they claim that plaintiff should have imposed a litigation hold on its contractor to preserve any documents produced in connection with its response to the oil spills, arguing that plaintiff should have anticipated that the documents would be needed by them in connection with the litigation. Defendants assert that they were, at a minimum, entitled to an adverse inference charge at trial.

The decision to impose sanctions for the spoliation of evidence is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion (*see Merrill v Elmira Hgts. Cent. School Dist.*, 77 AD3d 1165, 1166 [2010]; *Miller v Weyerhaeuser Co.*, 3 AD3d 627, 628 [2004], *lv dismissed* 3 NY3d 701 [2004], *appeal dismissed* 5 NY3d 822 [2005]). "[C]ourts will look to the extent that the spoliation of evidence may prejudice a party and whether a dismissal will be necessary as a matter of elementary fairness" (*Miller v Weyerhaeuser Co.*, 3 AD3d at 628 [internal quotation marks and citations omitted]). An adverse inference charge is not warranted in the absence of a showing that the documents in question ever actually existed, that they were under the opposing party's control

2. Defendants' right to appeal from the order denying summary judgment terminated upon entry of the final judgment (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). In any event, the issues raised on the appeal from that order are brought up for review by the appeal from the judgment (*see* CPLR 5501 [a] [1]; *State of New York v Joseph*, 29 AD3d 1233, 1234 n [2006], *lv denied* 7 NY3d 711 [2006]).

and that there is no reasonable explanation for failing to produce them (see *Jean-Pierre v Touro Coll.*, 40 AD3d 819, 820 [2007]; *Wilkie v New York City Health & Hosps. Corp.*, 274 AD2d 474, 474 [2000], *lv denied* 96 NY2d 705 [2000]).

Here, we find no abuse of discretion in the denial of defendants' motion for summary judgment, inasmuch as defendants failed to establish that they were prejudiced to the extent that they were unable to defend the case (see *Merrill v Elmira Hgts. Cent. School Dist.*, 77 AD3d at 1166-1167; *Hartford Fire Ins. Co. v Regenerative Bldg. Constr.*, 271 AD2d 862, 864 [2000]). Moreover, even assuming that there were additional documents that should have been preserved, the failure to give an adverse inference charge was harmless as defendants were allowed to question plaintiff's witnesses about the apparent lack of background documentation for some of the laboratory reports that they relied on and, as part of defendants' summation, to suggest to the jury that they could infer that any missing documents would benefit the defense (see *Gallo v Ricci*, 28 AD3d 1110, 1111 [2006], *lv denied* 7 NY3d 807 [2006]).

Defendants also contend that Supreme Court (O'Connor, J.) erred by admitting the reports issued by plaintiff's contractors into evidence. Defendants argue that the reports do not qualify as business records because they were not prepared by plaintiff and their admission into evidence improperly allowed plaintiff's experts to base their opinions on hearsay. While we agree that the mere filing of papers received from other entities is insufficient to qualify the documents as business records, such records may be admitted into evidence if the recipient can establish personal knowledge of the maker's business practices and procedures, or that the records provided by the maker were incorporated into the recipient's own records or routinely relied upon by the recipient in its business (see *People v Cratsley*, 86 NY2d 81, 90-91 [1995]; *Matter of Carothers v GEICO Indem. Co.*, 79 AD3d 864, 865 [2010]; *People v DiSalvo*, 284 AD2d 547, 548-549 [2001]).

Here, plaintiff established that the lab reports, test results and monitoring logs produced by the contractors were incorporated into DEC's own records and routinely relied on by DEC to perform its tasks of remediating the spill and investigating the source of the oil. A DEC representative testified that, while the agency is statutorily charged with responding to oil spills (see Navigation Law § 176), it does not have the resources to find the source and perform the clean-up operations. DEC therefore hires outside contractors to perform the work and it directs all aspects of the contractors' activities, including which samples to

obtain, test and record. According to plaintiff, the records at issue were generated by the contractors at DEC's direction and DEC was their primary custodian. DEC's representative confirmed that the laboratory test report samples were taken and sent to a state-certified lab at his direction, he chose the type of test to be performed on the samples and he was familiar with the test. Moreover, a DEC representative testified that the reports themselves were made for DEC in the regular course of business of the contractors, it was their regular course of business to create such reports, and they were prepared at or near the time that the samples were taken (*see* CPLR 4518 [a]; *People v Kennedy*, 68 NY2d 569, 579-580 [1986]; *People v Burdick*, 72 AD3d 1399, 1401 [2010]).

As the records were the contemporaneous business records generated by the contractors in the performance of their contractual duties and were routinely relied on by DEC in its fulfillment of its responsibility to remediate and investigate the spills, they were properly admitted as business records (*see People v Cratsley*, 86 NY2d at 90-91; *People v DiSalvo*, 284 AD2d at 548; *Plymouth Rock Fuel Corp. v Leucadia, Inc.*, 117 AD2d 727, 728 [1986]; *see also State of New York v Passalacqua*, 19 AD3d 786, 788 n [2005]; Navigation Law § 176 [1], [2]). Defendants also make the argument that the records were prepared solely for litigation and should have been excluded as unreliable on that basis as well, but we are not persuaded. While it was foreseeable that the records could be used in litigation, their primary purpose at the time they were generated was to determine the type of oil and its source in order to remediate the spill (*see People v Guidice*, 83 NY2d 630, 635 [1994]; *People v Foster*, 27 NY2d 47, 52 [1970]; Navigation Law § 176 [1], [2]; *compare People v Rogers*, 8 AD3d 888, 891 [2004] [blood test results from private lab generated at request of State Police for purposes of prosecution improperly admitted as business record]). The records having been properly admitted, plaintiff's experts could base their opinions on them as facts in evidence (*see Cassano v Hagstrom*, 5 NY2d 643, 646 [1959]; *Wagman v Bradshaw*, 292 AD2d 84, 88 [2002]).

Defendants' argument that plaintiff failed to present legally sufficient evidence connecting their tank system to the spills rests primarily upon their allegation that the expert witnesses who testified on plaintiff's behalf were unqualified, and their theories that oil from defendants' tank system traveled on a perched water table or through preferential pathways were speculative and unsupported by competent scientific evidence. While defendants also claim that plaintiff's expert testimony

fails to qualify under *Frye* (*see Frye v United States*, 293 F 1013 [1923]), they do not allege that plaintiff's experts relied on novel scientific theories. Rather, their arguments essentially challenge the credibility of the opinions of plaintiff's experts and not whether an adequate foundation was laid for their theories of causation.

We are satisfied, however, that Supreme Court did not abuse its discretion in finding that there was sufficient foundational support to admit the testimony of plaintiff's experts (*see Alexander v Dunlop Tire Corp.*, 81 AD3d 1134, 1137 [2011]; *Jackson v Nutmeg Tech., Inc.*, 43 AD3d 599, 602 [2007]; *see also Leto v Amrex Chem. Co., Inc.*, 85 AD3d 1509, 1510 [2011]). The record discloses that DEC representatives who responded to the spills observed evidence of overfills and leaks from defendants' tank system at the fill port and testified that the visible oil stains were evidence that the fill port was not operating properly. After the water main break, black oil was observed seeping out of clean soil next to defendants' building, floating on areas of perched water and seeping from horizontal holes drilled in the foundation of defendants' building. The reports and direct observations were that the oil contamination was concentrated along the building foundation and decreased further away from defendants' building. The reports in evidence of the oil samples collected, as well as expert testimony analyzing those reports, provide evidence that the oil found in the ground was consistent with the two different types of oil used by defendants in their tank system. Plaintiff also submitted evidence that there were underground utilities in the alleyway between the two apartment buildings and that the backfill used when the utilities were put in place could have allowed water to migrate from defendants' building toward River Terrace Apartments.

Although defendants presented conflicting evidence suggesting a different source of the oil and indicating that the direction of the groundwater flow and the lack of a perched water table would prevent oil originating in their building from being found in the locations where it was discovered, there was sufficient evidence from which the jury could have rationally concluded that defendants' tank system was a source of both spills. Defendants' arguments challenging the reliability of the experts' theories and highlighting their own experts' factual disagreements go to the weight to be given by the jury to the experts' testimony and do not preclude admissibility (*see Lugo v New York City Health & Hosps. Corp.*, 89 AD3d 42, 63 [2011]; *Matter of Laterza v New York State Racing & Wagering Bd.*, 68 AD3d 1509, 1511 n 4 [2009]). After reviewing the conflicting proof and competing

theories, we cannot say that the jury's verdict was against the weight of the evidence (*see Lolik v Big V Supermarkets,* 86 NY2d 744, 746 [1995]; *Calabro v Sun Oil Co.,* 276 AD2d 858, 860 [2000]).

None of the remaining errors claimed by defendants warrants a new trial. While we agree with defendants that the exclusionary rule that applies to fact witnesses does not apply to expert witnesses (*see People v Santana,* 80 NY2d 92, 100 [1992]), and Supreme Court should not have excluded their experts from the courtroom during trial, the circumstances here did not result in prejudice requiring reversal. Unlike in *Santana,* defendants here were able to prepare for the cross-examination of plaintiff's experts by virtue of the written expert disclosures, as well as the affidavits submitted in support of plaintiff's motion for summary judgment. Nor do we find error in the preclusion of the fire insurance maps or tank replacement reports proffered by defendants, as they were not defendants' business records, and defendants failed to establish that they routinely relied on the business records of the entities who prepared the documents (*see* CPLR 4518 [a]; *West Val. Fire Dist. No. 1 v Village of Springville,* 294 AD2d 949, 950 [2002]). In any event, the contents of the maps and reports were made known to the jury through the testimony of defendants' experts.

We also find no merit to defendants' challenge to the jury charge, inasmuch as it mirrored the pattern jury instructions and, viewed as a whole, "adequately presented the pertinent legal principles to be applied and the factual issues to be resolved" (*Vasquez v Consolidated Rail Corp.,* 180 AD2d 247, 251 [1992], *lv denied* 80 NY2d 762 [1992] [internal quotation marks and citation omitted]; *accord Spensieri v Lasky,* 94 NY2d 231, 239-240 [1999]; *McCluskey v West Bradford Corp.,* 177 AD2d 744, 745-746 [1991], *lv denied* 80 NY2d 753 [1992]). Defendants' challenge to the verdict as inconsistent is not preserved for review as it was not raised prior to the discharge of the jury (*see Bradley v Earl B. Feiden, Inc.,* 8 NY3d 265, 272 n 2 [2007]; *Pipp v Guthrie Clinic, Ltd.,* 80 AD3d 1014, 1016 [2011]). Nor do we find any basis to disturb the jury's discretion in imposing penalties (*see State of New York v LVF Realty Co., Inc.,* 59 AD3d 519, 523 [2009], *lv denied* 12 NY3d 871 [2009]; *State of New York v Super Value,* 257 AD2d 708, 710 [1999], *lv denied* 93 NY2d 815 [1999]). We have considered defendants' remaining claims and find them to be unavailing.

Spain, Malone Jr., Garry and Egan Jr., JJ., concur. Ordered that the appeal from the order entered January 12, 2011 is dismissed, without costs. Ordered that the judgment and the order entered November 17, 2011 are affirmed, without costs.