OPINION OF THE COURT
John R. Schwartz, J.
The issue here is what obligation do the People have to produce at trial the videotape taken of the defendant following his arrest for driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), and if there is such an obligation, what sanctions should be imposed on the People for their failure to produce it or make it available?
The answer to these questions depends on (1) a review of the facts, (2) the significance of the failure of defense counsel to request the videotape, and (3) the standard by which the prosecution’s failure to volunteer exculpatory material should be judged.
On June 5,1985, at 12:30 p.m., while on routine radar traffic patrol on Mt. Read Boulevard in Rochester, New York, Officer Campbell observed the defendant’s vehicle approaching him *248 going approximately 77 miles per hour. At the time, the vehicle was about 350 feet behind him. As the vehicle passed through the radar equipment’s "zone of influence”, the radar instrument read out a speed of 75 miles per hour. Once the vehicle passed, the officer stopped the vehicle and asked the defendant for his license, registration and insurance card. While talking to the defendant, the officer testified that he "smelled alcoholic beverage on his breath”. He asked the defendant if he had been drinking and the defendant replied, "I had three beers”. He then asked the defendant to submit to an "Alca Sensor Roadside Test”. The defendant refused. The officer went back to his patrol car and radioed his dispatcher. While he was doing this, the defendant exited his car and walked to the rear of the defendant’s car. As he did this, "he appeared very unsteady on his feet”. The officer placed handcuffs on him and placed him in the rear of his patrol vehicle. Officer Campbell radioed Officer Cansdale of the "A.L.E.R.T.”[1] unit to, as he put it, "assist him in any paperwork that had to be done in the Public Safety Building”. When Officer Cansdale arrived, he transported the defendant to the Public Safety Building. Officer Campbell never saw the defendant again and admitted that he did not request the defendant to perform any so-called "motor tests”. Officer Cansdale testified that while at the Public Safety Building, he made certain observations of the defendant: namely, that he had "bloodshot eyes”, his "breath smelled of alcoholic beverages” and he "was unsure, unsteady on his feet”. This officer then asked the defendant to perform certain "motor tests”. The first test required the defendant to raise his right leg and foot off the ground. As he did this, the officer testified that "he fell to the, I believe, he fell to the right and caught himself on the wall. Then I proceeded to explain the next step which would be walking, I believe, directly towards me on a black line, taped line, and then he had to turn around. He was wobbly and staggering on the line” (emphasis added). He did not request any other "motor tests”. The record is silent as to whether the defendant was asked to submit to any "chemical tests”, pursuant to Vehicle and Traffic Law § 1194, or whether the defendant refused. Tests results were not offered into evidence. The officer did, however, testify that he videotaped the whole booking process and the performance of the "motor tests”. *249 However, the videotape was not offered into evidence nor was any explanation given as to its whereabouts.
Once the People rested, the defendant rested, without putting on proof. He moved to dismiss on the grounds that there was no proof beyond a reasonable doubt of intoxication and if the videotape had been introduced, it would have exculpated the defendant and established that he was able to perform all the "motor tests” without evidence of intoxication.
Since the use of videotape is becoming very commonplace in driving while intoxicated arrests and since there are no recorded cases[2] in New York dealing with the use of videotape at trial, this court will deal with the following issues: (1) the prosecutor’s obligation to preserve the tape for trial; (2) the prosecutor’s obligation to produce it at trial even absent a request; and (3) the sanctions that should be imposed on the prosecutor if there is a failure to produce it.
Had the tape in question been destroyed through inadvertence or otherwise, an outright dismissal of the charge might be warranted, for such action would deprive the defendant of potentially valuable material relating to his defense (People v Saddy, 84 AD2d 175; People v Pantino, 106 AD2d 412). Here, however, there is nothing in the record indicating the tape had been destroyed or even if it is still in existence. The Assistant District Attorney, in response to the defendant’s motion to dismiss, stated she never requested it from the police, nor did she ever view it. The defense did not request it, pursuant to CPL 240.20, nor did he ask for it, pursuant to Brady v Maryland (373 US 83).
Does this failure to request it relieve the prosecutor of viewing it and having it at the trial? "|T]f the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made.” (United States v Agurs, 427 US 97, 107.) Whether the nondisclosure is a result of negligence or design, it is the responsibility of the prosecutor. (Giglio v United States, 405 US 150, 154.) "Good faith, therefore, may not excuse even a negligent failure to disclose unrequested exculpatory evidence where that evidence is highly material to the defense.” (People v Simmons, 36 NY2d 126, 132.)
*250 Therefore, this court holds that a prosecutor has an affirmative duty to view the videotape and, if it is exculpatory, make it available to the defendant, even absent a request for it.
The question now remains what sanctions should be imposed on the prosecutor for her failure to view and make the tapes available at trial. In People v Kelly (62 NY2d 516), the court held that a dismissal of an information was an inappropriate sanction in response to the prosecutor’s wrongful failure to preserve discoverable evidence. "Although the choice of 'appropriate’ action is committed to the sound discretion of the trial court, as a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by loss of evidence” (62 NY2d, at p 521). Here, likewise, since the failure to view the videotape and produce it at trial was through inadvertence, outright dismissal is too drastic a remedy.
The appropriate remedy is, in this court’s opinion, to charge the fact finder "that they may draw the strongest inference that the videotape would not support the People’s proof of intoxication”. The court bases its opinion on an analysis of the following cases and legal writings:
Although the Criminal Jury Instructions (1 CJI [NY]) does not provide "a failure to produce document” charge or comment on the issue at all, its counterpart for civil jury instructions does — New York Pattern Jury Instructions — Civil (PJI 1:77). It is suggested in that charge that a jury be instructed on the issue as follows: "you may, in weighing the evidence in this case, though you are not required to, infer that the document if produced would not have supported (plaintiff, defendant) on that issue and draw the strongest inferences against him on that issue that the evidence permits”. See also, Noce v Kaufman (2 NY2d 347, 353) where the court stated the rule as follows, "where an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits.” (See also, Richardson, Evidence §92 [10th ed]; Fisch, New York Evidence § 1126.)
In criminal cases, the Court of Appeals has held that a failure to produce a witness who is under the prosecutor’s control and whose testimony is not merely cumulative but material, will warrant a "missing witness” charge.
In People v Wright (41 NY2d 172) the court, in reversing the *251 conviction of the defendant and ordering a new trial because the trial court refused to charge that a jury could infer that another police officer, who witnessed the alleged crime but not called as a witness despite his presence in the courtroom, would not have strengthened the People’s case. The court stated: "Defense counsel had the right during summation to comment concerning [the other officer’s] absence but the prosecutor had no right to respond by asserting that he did not 'want to encumber’ the jury and that the People don’t have to call every witness if the witness 'is just going to come in and repeat the testimony of his brother officer’ ” (41 NY2d 172, 176, supra).
In People v Brown (34 NY2d 658, 659-660) the court stated,
"Proof of the commission by defendant of the crime charged here was dependent almost solely on the testimony of Patrolman Filler. Where another police officer * * * had acted jointly with Patrolman Filler and, presumably, was an eyewitness to the transaction and was readily available to the prosecution, better practice would have been to have put him on the stand as well. In circumstances such as these, testimony of the second officer would not necessarily be cumulative only or trivial.
"Additionally, in the case of noncumulative testimony, the defendant cannot be deprived of his right to comment on the failure of the prosecution to produce such a witness, or of his right, on request, to a proper charge as to the inference which might be drawn by the jury from the failure of the prosecution to produce the witness”.
The court further commented that "Although in a literal sense such a witness could be said to be available to both parties, he would be expected to be favorable to the prosecution and hostile to the defense” (34 NY2d, at p 660; see also, People v Valerius, 31 NY2d 51).
Applying these same principles to the instant case, if a second officer was present and observed all the "motor tests” upon which the People based their proof, "better practice would have been to have put him on the stand as well”. Here, the very movements about which Officer Cansdale testified were recorded for the fact finder to see. Any doubt about whether the defendant did in fact stumble as he raised his leg and whether "he was wobbly and staggering on his feet” would be eliminated once and for all. Evidence as strong as this should not be hidden from the fact finder through inadvertence or otherwise.
*252 A failure to produce such conclusive evidence of the manner in which the defendant performed the “motor tests” will therefore warrant a charge to the jury that “they may infer, if they so choose, that the videotape would not support the People’s proof that the defendant did in fact stumble and was in fact wobbly and unsteady on his feet” as he walked the tape.
Since in this case the court is also the fact finder, the court will apply the inference that the videotape would not support the People’s proof. Therefore, based on the brief period of time that Officer Campbell observed the defendant before he left and the inferences that should be drawn against Officer Cans-dale’s testimony — that the videotape would not support his testimony — this court finds the defendant not guilty of “driving while intoxicated” or any lesser included charges. Proof being required here, as in all criminal trials, beyond a reasonable doubt.

. Rochester Police Department Special Unit called A.L.E.R.T. (Accident Location Enforcement Reduction Tactics).

. In fact, there is only one recorded criminal case in New York that deals with the use of videotapes at all in a criminal trial. That case merely deals with the foundation that must be laid before the tape is admissible. (People v Strozier, 116 Misc 2d 103.)