People v Martinez (2025 NY Slip Op 25056)

[*1]

People v Martinez

2025 NY Slip Op 25056

Decided on March 5, 2025

Supreme Court, Kings County

Gershuny, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on March 5, 2025
Supreme Court, Kings County

People of the State of New York

against
Wuielver Vazquez Martinez (AKA Wuielver Martinez Vasquez).

Indictment No. 71402-24

People: Yaakov Moshe Block, Kings County District Attorney's Office, 350 Jay Street, Brooklyn, NY 11201;
Defendant: Izabel Garcia, Brooklyn Defender Services, 177 Livingston Street, New York 11201

Jeffrey Gershuny, J.

SUMMARY
The defendant's motion to dismiss for insufficient discovery disclosure is GRANTED.
The People promised they had disclosed all the required evidence in the defendant's case without ever reviewing it, and obvious material remained missing. Here, the defendant is accused of assault in the second degree (Penal Law "PL" 120.05 [2]) and other related charges. The defendant moves to invalidate the People's certificate of compliance (COC) and statement of readiness and dismiss the case for violation of speedy trial (Criminal Procedure Law "CPL" 30.30 [1] [a]; 245.50 [3]). The defendant argues that several types of discoverable material were not disclosed at the time the People certified their discovery compliance. The People oppose and argue that, despite missing discovery, their COC was filed after the People exercised due diligence and reasonable inquiry.
The People must certify that they "exercis[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery" (CPL 245.50 [1]) and, at the very least, that "due diligence and reasonable inquiry" must include a review of the evidence they already have. Without reviewing the evidence collected, there is no way for a diligent prosecutor to know that discovery is complete. For the following reasons, the defendant's motion is granted.

DECISION AND ORDER
[*2]I. Discovery
In order for the People to announce ready for trial, they must automatically disclose all discovery in their custody and control that relates to the subject matter of the defendant's case (CPL 245.50 [3]; 245.20 [1], [2]). Once the discovery is turned over, the People must file a COC. A COC is a promise from the prosecutor that they have exercised due diligence and made reasonable inquiries to learn of existing discoverable material and have disclosed that material to the defendant (CPL 245.50 [1]). Therefore, "the key question in determining if a proper COC has been filed is whether the prosecution has 'exercis[ed] due diligence and ma[de]reasonable inquiries to ascertain the existence of material and information subject to discovery'" (People v Bay, 41 NY3d 200, 211 [2023]). If the People do not turn over all the discovery in their possession related to the subject matter of the defendant's case, they cannot announce ready for trial (CPL 245.50 [3]).
The Court will address the discovery at issue in the framework just discussed.
A. The missing evidence was automatically discoverable.
i. Any documents created by law enforcement relating to the subject matter of the defendant's case are automatically discoverable (CPL 245.20 [1] [e]).
The defendant argues that the People failed to disclose a grand jury synopsis report, handwritten notes from a responding officer, an aided card, text messages made between Det. Theiss and the complainant, and Det. Theiss's case files. The People concede that most of these items are automatically discoverable, and argue that despite their due diligence, they were unaware this evidence existed.
As to Det. Theiss's case files, the People argue that Det. Theiss was not assigned to the defendant's case and told the People that he did not have any related paperwork to disclose. The Court requested Det. Theiss's files containing any information about the complainant and the defendant. The Court reviewed a document in Det. Theiss's file referencing an interview between himself and the complainant on December 21, 2023 in which she reports domestic violence from the defendant. That interview occurred between the two allegations of domestic assault in this indictment.
As the discovery statute states, "all statements, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto" is discoverable (CPL 245.20 [1] [e]). Contrary to the People's assertions, recorded statements between the complainant and police accusing the defendant of committing domestic violence are automatically discoverable in a domestic violence case (see People v Swift, 195 AD3d 1496 [4th Dept 2021]; People v Cartagena, 175 NYS3d 198 [Crim Ct, NY County 2022]. At the very least, the discovery statute orders the People to adopt a presumption of openness (CPL 245.20 [7]) and wherever the People believe that material is not the subject matter of the defendant's case or otherwise protected, they must move for a protective order (CPL 245.70; see People v Lampe, 217 NYS3d 852 [Sup Ct, Bronx [*3]County 2024]). The grand jury synopsis report, handwritten notes from a responding officer, an aided card, text messages made between Det. Theiss and the complainant, and Det. Theiss's case files were all automatically discoverable and should have been disclosed with the People's COC.
ii. The names and work affiliation of officers involved in the defendant's case are automatically discoverable (CPL 245.20 [1] [d]).
The defendant also argues that the People failed to disclose the name and work affiliation of Det. Theiss and another officer who created an aided card. The People are silent on the discoverability of the identity of the officer who wrote the aided card and therefore concede that it also should have been disclosed (see People v Serrano, 225 NYS3d 365 [2d Dept 2025]). As to Det. Theiss, the defendant argues that he was involved in the defendant's case based on a review of body worn camera footage and DD5s.[FN1]
The People do not directly respond to this argument, but instead argue that "beyond the [texts and call] itself, Dt. Theiss is not an officer related to this case" (People's Response, P8).
The subject matter of a defendant's case is not dictated by who the NYPD assigns as an "arresting officer" or "lead detective". The defendant is charged with incidences of domestic violence. Det. Theiss met with the complainant, interviewed her and took a report of domestic violence involving the defendant. On the night of the defendant's arrest, the complainant then texted Det. Theiss "I am with the aggressor" and then had a phone call with Det. Theiss immediately thereafter. Det. Theiss spoke with responding officers and helped them locate arrest warrant information and instructed them to voucher the defendant's cellphones for further investigation. He is listed as a source of information in DD5s. Det. Theiss is a member of "law enforcement" who had "evidence or information relevant to any offense charged or to any potential defense thereto" (CPL 245.20 [1] [d]).
Therefore, regardless of whether Det. Theiss was the assigned detective on the case or not, the People were obligated to disclose Det. Theiss's name and work affiliation with their COC.
B. The People did not exercise due diligence and make reasonable inquiry.
"Should a defendant bring a CPL 30.30 motion to dismiss on the ground that the People failed to exercise due diligence and therefore improperly filed a COC, the People bear the [*4]burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (People v Bay, 41 NY3d 200 at 213 [2023]). The People filed a COC and certified that "after exercising due diligence and making reasonable inquiries to ascertain the existence of discoverable material and information subject to discovery . . . the People have disclosed and made available to the defendant all known material and information subject to discovery . . ." (People's COC, P1). For the foregoing reasons, that statement was false.
In their response, the People argue that "while the People agree that inadvertent errors were made in the collection and sharing of discovery. . . these errors do not vitiate the People's due diligence in identifying, obtaining, and disclosing all discoverable material" (People's Response, P4). This Court disagrees. The People did not review the discovery in their possession, did not make further reasonable inquiry, and certified their case while discovery was obviously missing. This is a lack of due diligence, not "inadvertent error".
i. Due diligence and reasonable inquiry require that a prosecutor review the evidence they collect.
It is clear in this case that the People did not diligently review the evidence in their possession before filing their COC. The district attorney's office created a document titled "Grand Jury Synopsis" that was a write-up summary of their grand jury presentation. This document was not disclosed with their COC, the reason for the mistake being an unexplained "inadvertent error" (People's Response, P5). An officer responding to the incident is recorded on body worn camera taking handwritten notes while investigating. The People say they did not disclose these notes with their COC because making handwritten notes "is not a common practice, and the People were not aware of said notes until raised by defendant's discovery letter" (People's Response, P5). Another officer created an aided card. The People say that the aided card and identity of the authoring officer were not disclosed with their COC because "the reports were made in a different precinct than the incident locations" (People's Response, P6) and "the People did not notice the missing aided [sic] until raised by defendant's letter" (People's Response, P7). Det. Theiss interviewed the complainant when she reported incidences of domestic violence. That report was not disclosed because the People had a "conversation with Dt. Theiss, during which he assured me that he has not and is not investigating any case in which our complainant [] is a victim/complainant" (People's Response, P8). Det. Theiss texted and called the complainant the night of the defendant's arrest. The People say that these messages and Det. Theiss's identity were not disclosed with their COC because "the People had no knowledge of his text with the complainant on the date of the arrest until it was brought up by defense counsel" (People's Response, P7).
These shortcomings illustrate a pattern: the People did not review the evidence they collected. Instead, they filed a COC with whatever files the police provided and waited for the defendant to tell them what was missing.
Our discovery statute does not require a "perfect prosecutor" or impose a rule of "strict liability" when discovery is missing (People v Bay, 41 NY3d 200, 212 [2023]). Instead, the "due diligence and reasonable inquiry" our law requires is a "familiar and flexible standard that [*5]requires the People 'to make reasonable efforts' to comply with statutory directives" (id.). We are familiar with this standard of diligence and inquiry from caselaw that predates our discovery statute.[FN2]
Under the law, a prosecutor must reasonably inquire from their sources whether discoverable material exists (CPL 245.50 [1]). That inquiry begins with a request for the evidence but must be followed by a review of that evidence. Again, this is a familiar standard.[FN3]

In practice, the People routinely review evidence to comply with their discovery obligations. In order to satisfy CPL 245.20 (1) (c) and (d), the People must review police documents for names of witnesses; to satisfy CPL 245.20 (1) (j) and (s), the People must review scientific testing results to know who performed those tests and what additional reports or resumes they must disclose; the People must review police reports to satisfy CPL 245.20 (1) (g) and disclose all video or 911 evidence that was collected. Review of the evidence for completeness is a reasonable step in the People's inquiry to determine if additional discovery exists (People v Luna, 83 211 NYS3d 734 [App Term, 2d Dept, 9th & 10th Jud Dists 2024] [holding the People must review the documents requested before they can certified discovery]; People v Baker, 229 AD3d 1324, 1326-1329 [4th Dept 2024] ["The People failed to put forward any evidence of their efforts 'to ascertain the existence' of [missing discovery] prior to filing [their COC]"] [citing CPL 245.50 and Bay]).
In this case, the People argue that they requested "all notes/paperwork" from the arresting officer on February 1, 2024" (People's Response, P6). "Without more, the mere [*6]statement that requests were made is insufficient to establish due diligence" (People v Gourdine, 83 Misc 3d 1264[A] [Sup Ct, Kings County 2024]). Had the People reviewed the evidence in this case, it would have been abundantly clear that files were missing.
ii. The duty to exercise due diligence and make reasonable inquiry does not shift from the prosecutor to the police.
The People can never rely on the police to satisfy their duty of discovery compliance. Article 245 specifically assigns this duty to the People alone (CPL 245.50 [1]). In this case, the People requested evidence from the arresting officer and certified that what they received was complete; relying on the police to provide that assurance without reviewing the evidence themselves is misplaced (see People v Li, 204 NYS3d 924 [Sup Ct, Richmond County 2024] ["The efforts amount to nothing more than the People asking for certain items of discovery and relying on the word of their case detective when they were told said items did not exist. When Det. Frascatore advised the People that the [missing discovery] no longer existed, the inquiry stopped . . . A review of the NYPD file would have shown that many more discoverable items existed . . ."]). Our law is clear: "it is the People's obligation to abide by the discovery statute; it is not the NYPD's obligation" (id.; CPL 245.50 [1]) and therefore the People must review the discovery they promise is complete (see People v Guzman, 168 NYS3d 212 [App Term, 2d Dept, 9th & 10th Jud Dists 2022] [COC invalid where the People did not "provide any explanation as to why they did not check the items sent to them against the list of the requested items, or against the police reports they sent to the defense"].
Our discovery statute describes a proactive prosecutor making reasonable inquiries, not a courier blindly rubber-stamping delivery from the police to the defendant (see People v Mitchell, 228 AD3d 1250, 1256 [4th Dept 2024] [ ". . . nor did the DA suggest that the People, prior to filing the initial COC, ever check their own files to determine whether the complainant . . . had a criminal history. Instead, the People relied entirely on [a report from the Ontario County Sheriff's Office]" and their COC was invalid]; People v Weaver, 220 NYS3d 645 [Sup Ct, Queens County 2024] [COC invalid where People did not disclose discovery of a second firearm and relied on the police file without interviewing civilian who found the weapon]).
"Reasonableness, then, is the touchstone" and while "analysis of whether the People made reasonable efforts . . . is fundamentally case-specific" "good faith. . . is not sufficient standing alone and cannot cure a lack of due diligence" (Bay at 212 [2023]). Good faith reliance on police officers who state that "everything has been turned over" cannot replace a prosecutor's diligent review of the evidence itself.
iii. There is no combination of factors that will replace due diligence and reasonable inquiry.
The facts of a case will change how due diligence and reasonable inquiry are carried out, but will never replace the People's duty to comply with their discovery obligations. The Court of Appeals has given examples of factors a court can consider when assessing due diligence and reasonable inquiry (Bay at 212 [2023]). This list has been interpreted as requiring "a holistic assessment of the People's efforts to comply with the automatic discovery provisions" (People v Cooperman, 225 AD3d 1216 at 1220 [4th Dept 2024]). The People do not argue that this case [*7]was complex. The People do state that they "shared hundreds of pages of Police paperwork and Detective notes, in addition to multiple video files, axon data, memobooks and Giglio records" (People's Response, P5). While the People do not specifically argue that this case involved voluminous discovery, even if they did, a holistic assessment of these factors is not a substitute for a showing of due diligence and reasonable inquiry itself.
For example, while the Court of Appeals encourages courts to consider "the volume of discovery provided and outstanding" (Bay at 212 [2023]), this factor does not give prosecutors a per se excuse to skip due diligence and reasonable inquiry when certifying cases with large amounts of discovery. In this case, the People's good faith reliance on assurances from police officers does not replace the due diligence of independent review, no matter the volume of discovery disclosed (cf People v Arbaszewski, 2025 NY Slip Op. 50227(U) [Queens Sup Ct 2025] ["It is not reasonable to expect the assigned ADA to watch all 18 body-worn camera videos disclosed in this case from start to finish at this stage of the proceedings in an effort to double-check that there were not additional photographs taken."]).
There is no "reasonableness" equation in the discovery statute that says the more discovery you have, the less due diligence or reasonable inquiry you are required to show. In fact, the opposite is written: the discovery statute's requirements remain the same for cases with 10 files and those with 10,000 files (CPL 245.50 [1]). The only reasonable adjustments are the expectations of how that due diligence and reasonable inquiry looks in practice, which is completely dependent on the facts of the case.
Our law already accounts for situations where the People may have large amounts of evidence, and it gives an automatic extension to certify discovery without motion when they have voluminous material (CPL 245.10 [1] [a]). The People may seek even further extensions if they file a motion based on good cause (CPL 245.10 [1] [a] [iv] [B]; 245.70 [2]). What the law does not allow is a COC to act as an inconsequential placeholder for the People to file, and then wait for a defendant or a police officer to alert them to missing discovery.
C. The People's showing of due diligence and reasonable inquiry is insufficient.
The defendant has challenged the People's discovery compliance and now "the People bear the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (Bay at 213 [2023]). Here, the People requested discovery from the police, make no representation they reviewed it for completeness, and then certified that they had disclosed all discoverable material. Beyond this single request for evidence, there are no representations by the People that any other steps were taken to comply with the discovery statute.
One of the most applicable factors to consider in this case was "how obvious any missing material would likely have been to a prosecutor exercising due diligence" (id. at 212). The Court reviewed the body worn camera footage at issue and it is blatantly obvious that Det. Theiss communicated with the complainant and responding officers during the investigation. The defendant also argues, and the People do not dispute, that it is obvious from other body worn camera footage that a responding officer made handwritten notes during his investigation. Any prosecutor who watched this footage would reasonably believe there was outstanding discovery (see People v Nigel D, 215 NYS3d 922 [Sup Ct, Kings County 2024] [where COC was invalid for failing to disclose screenshots of text messages between two detectives; DD5s stated that one [*8]detective texted the other a screenshot of the defendant for an identification, it was obvious based on the discovery that messages between the two detectives existed "therefore the existence of the text messages should have been obvious to the People"]).
As for the remaining missing evidence, the People claim that these discovery lapses were "inadvertent errors". Calling mistakes "inadvertent" does not give the Court any insight into whether the mistakes were in spite of their due diligence, or the result from a lack of due diligence. What the Court can consider is the "explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (Bay [2023] at 212). The People explain throughout their response that they were unaware of the missing discovery, which was why they did not disclose it; this demonstrates the lack of due diligence and reasonable inquiry required by CPL 245.50 (1). When the defendant alerted the People that discovery was missing on October 15, 2024, the People did not provide the missing documents until December 27, 2024 and provide no account for that two-month delay.
Again, the People do not claim that the defendant's case was complex, or that there was a voluminous amount of discovery. The People also do not move for a finding of special circumstances (CPL 245.50 [3]). The People's efforts to comply with the discovery statute's directives amount to a single request for evidence from police, without any review. The People's claim that they were unaware of obviously missing evidence demonstrates that they did not "ascertain the existence of material and information subject to discovery" (CPL 245.50 [1]).
For these reasons, the defendant's motion to invalidate the People's COC is granted.
II. Speedy Trial
Based on the above discovery arguments, as well as other adjournment calculations, the defendant moves to dismiss pursuant to CPL 170.30 (1) (e), CPL 30.30 (1) (a) and CPL 245.50 (3). He is accused with at least one felony offense, therefore the People have six months from the commencement of the criminal action to be ready for trial (CPL 30.30 [1] [a]; People v Cooper, 98 NY2d 541, 543 [2002]). In this case, the speedy trial period was 183 days. "[O]nce a defendant has shown the existence of an unexcused delay greater than six months, the burden of showing that time should be excluded falls upon the People" (People v Barden, 27 NY3d 550 [2016], quoting People v Santos, 68 NY2d 859, 861 [1986]; see People v Santana, 80 NY2d 92, 105 [1992]).
Below is a calculation of speedy trial time, period-by-period:
February 28, 2024 — May 8, 2024 (70 days included)
The defendant's case commenced at his arraignment on the felony complaint on February 28, 2024. The case was adjourned for grand jury presentment, the People's COC and a statement of readiness. Seventy days are included in this period.
May 8, 2024 — July 15, 2024 (0 days included)
After the defendant was indicted, the defendant filed an omnibus motion on May 8, 2024. Parties agree that this motion stopped the speedy trial clock (CPL 30.30 [4] [a]) and no days are [*9]included in this period. During this period, the People filed their COC and announced ready on September 24, 2024. After the People filed their COC in September, the defendant alerted them to missing discovery on October 15, 2024. For the abovementioned reasons, that COC was invalid and therefore the People's statement of readiness was also invalid (CPL 245.50 [3]).
July 15, 2024 — December 27, 2024 (165 days included)
On July 15, 2024 the court issued a decision on the defendant's omnibus motion. Several adjournments occurred in this period, during which the People continued to rely on the invalid COC filed on September 24, 2024 and could not announce ready for trial. For the reasons discussed above, 165 days are included in this period.
December 27, 2024 — present
Following the court's decision, the People filed a supplemental COC on December 27, 2024 with the missing discovery requested by the defendant. With this completion of discoverable material, the People could validly announce ready for trial and stop the speedy trial clock. No time is included thereafter.
Therefore, the Court finds a total of 235 days included in speedy trial time. This total exceeds the six months mandated by CPL 30.30 (1) (a), and the defendant's motion to dismiss is granted.
IT IS SO ORDERED. The clerk is directed to enter the order.
Dated: March 5, 2025
Kings County, New York
Hon. Jeffrey Gershuny
A.J.S.C.

Footnotes

Footnote 1: Body worn camera footage from the scene of the defendant's arrest shows an officer speaking to Det. Theiss on speakerphone. The complainant had Det. Theiss's phone number saved on her cellphone and the call was made from her phone while Det. Theiss spoke to responding officers. On the phone call, Det. Theiss gives the responding officer information about the defendant to assist in his arrest and requests that the officers collect evidence from the defendant. Det. Theiss also texted and spoke with the complainant during the defendant's arrest. A review of Det. Theiss's case file indicates he interviewed the complainant and discussed domestic violence between her and the defendant.

Footnote 2: Under Brady and its progeny, courts have routinely recognized a prosecutor's duty to learn, inquire, seek out and disclose exculpatory material (see Brady v Maryland, 373 US 83 [1963]); People v Santorelli, 95 NY2d 412, 421 [2000] ["A prosecutor must "learn of any favorable evidence known to the others acting on the government's behalf in the case" and promptly disclose any such material evidence to the defendant" [emphasis added] quoting Kyles v Whitley, 514 US 419 [1995]; People v Garrett, 23 NY3d 878, 889 [2014] [citing Kyles]; People v White, 45 Misc 3d 694 [Crim Ct, NY County 2014] ["However, the People have a continuing Brady obligation to conduct an actual investigation into whether any information exists . . . and to disclose any of this information to the defense. This duty includes review of the most recent maintenance records to see if they contain repair information"] [emphasis added; internal citation omitted.]).

Footnote 3: (People v Karns, 130 Misc 2d 247, 249-250 [Rochester City Ct, Monroe County 1985] ["[T]his Court holds that a prosecutor has an affirmative duty to view the videotape and, if it is exculpatory, make it available to the defendant, even absent a request for it"] [emphasis added]; People v Sweeney, 18 Misc 3d 1134[A] [Albany City Ct 2008] [Because the video recording was never viewed by anyone, it can never be known whether or not it was exculpatory in nature. The foreclosure of this analysis is due solely to the inaction of the People"]; People v Ariosa, 172 Misc 2d 312, 315 [Monroe County Ct 1997] ["Accordingly, this Court finds that the appropriate sanction would be one that would send a message to the People that their review of discoverable materials requested by the defense and their response to those requests has to be more than just a boilerplate, cursory review and response. It must be a pro-active, vigorous attempt to respond to the requests made by defense counsel or to seek protective orders in circumstances they feel are inappropriate for discovery."])